## COOPER v. McCORMICK.

PUBLIC LANDS OF THE STATE—LEASE OF STATE LANDS—RENEWAL—
BOARD OF LAND COMMISSIONERS, DUTY AND DISCRETION OF—STAT-
UTES—STATUTORY CONSTRUCTION—RECLAMATION OF STATE LANDS
AS CONDITION OF RENEWAL OF LEASE—FRAUD—CONTEST PROCEED-
INGS, APPEAL FROM DECISION OF BOARD—PRACTICE IN CONTEST PRO-
CEEDINGS—APPEAL AND ERROR—WAIVER. ·

1. It is not a valid objection to the renewal of a lease of state
lands that the lessee, for several years prior to his lease, occu-
pied the premises without procuring a lease.

2. The statutory provision that, in leasing state lands, prefer-
ence shall be given to the applications of citizens and taxpay-
ers, is required to be followed only where other things are
equal; and does not require or intend that, in all cases and un-
der all circumstances, the application of an alien or non-tax-
payer should be rejected in favor of a citizen or taxpayer.

3. In ordinary cases the State Board of Land Commissioners
is vested with a wide discretion in the matter of renewing
leases, which is to be exercised reasonably rather than arbi-
trarily, and with a due regard to the rights of the lessee, as
well as the interest of the State, taking into consideration
all the statutory regulations relating thereto.

4. It is probable that the discretion of the board is such that,
except in case of fraud or grave abuse resulting in manifest
injustice, the courts, in ordinary cases of the renewal of
leases, would not feel warranted in interfering with its ex-
ercise.

5. Under the statute (R. S., Sec. 815) giving a right of renewal
of a lease of state land whenever the lessee shall have re-
claimed the same by irrigation, and shall have procured an
adequate and perpetual water supply therefor, and provided
suitable ditches for its reclamation, and providing that such
renewal shall be dependent upon the continuous irrigation and
cultivation of "at least forty acres in every one hundred and
sixty acres of said land," the right exists whenever it appears
that the quantity of land aforesaid has been continuously irri-
gated and cultivated, notwithstanding that a greater body of
the land may be reasonably susceptible of cultivation.

6. The statute (R. S., Sec. 815) granting an absolute right to
a lessee of state lands to repeated renewals of his lease for an
aggregate period of 20 years upon reclaiming the land by irri-

gation, and securing a perpetual and adequate water supply, and providing suitable ditches therefor, should be liberally construed, in view of its purpose and policy.

7. Against the contention that the expression in the statute "at least forty acres in every one hundred and sixty acres" requires the lessee as a condition to renewal to have reclaimed at least forty acres in every technical quarter section, according to public survey, it is held that the expression should be given as broad and liberal an interpretation as it will admit of, consistent with the spirit, purpose and manifest policy of the statute, and the conditions attending the reclamation of the wild and arid lands of the State.

8. Literally, the phrase "in every one hundred and sixty acres of said land," as used in Section 815, Revised Statutes, does not refer solely to a technical quarter section.

9. If the phrase "in every one hundred and sixty acres of said land," as used in Section 815, Revised Statutes, should be construed literally, the statute might require the irrigation and cultivation of at least forty acres in every one hundred and sixty-acre tract; but such tract would not necessarily be confined to the largest subdivision of a section known technically as a quarter section.

10. The phrase "in every one hundred and sixty acres of said land" was not intended to be, and should not be, construed literally, since such a construction would render a statute adopted in pursuance of a wise, broad and beneficent policy of very limited application and of little use.

11. The expression "in every one hundred and sixty acres of said land," as employed in Section 815, Revised Statutes, refers to quantity rather than to a technical quarter section or to any particular tract or body of land.

12. To entitle a lessee of state lands to a renewal of his lease under Section 815, Revised Statutes, on the ground of its reclamation, it is not required that the part or parts of the land continuously irrigated and cultivated should be confined to any particular legal subdivision or any particular tract.

13. It is sufficient, so far as location is concerned, that *for* every one hundred and sixty acres of land embraced in his lease in respect to quantity, the lessee shall have continuously irrigated and cultivated at least forty acres, or one-fourth of the land.

14. The fact that the opinion of an applicant for the lease of state lands as to value, stated in his application, is lower, or

differs from that given by another applicant, is not sufficient to support a finding of fraud upon the board, where there has been no concealment or misrepresentation of material facts.

15. It is not a valid objection to the renewal of a lease of state lands under Section 815, Revised Statutes, on the ground of reclamation, that the application for renewal did not show on its face that it was claimed under said section, where the board knew that the applicant was the lessee, and the only other applicant also knew it, and that the lessee had irrigated the land, and at the hearing, and before the board acted, an offer was made to amend the application, and the board was then fully informed of the applicant's claim and desire.

16. The parties were adverse applicants for the lease of the same tract of state land, one of them claiming a right of renewal. Each filed a written application for the land under the rules of the Board of Land Commissioners. The parties were ordered to appear at a time fixed and submit whatever evidence they desired, and at the appointed time a hearing was had before the board, to determine the party to whom the lease should be granted, and evidence was introduced. Thereupon the board rendered its decision, awarding the lease to defendant in error. *Held,* that the proceeding amounted to a contest within the provisions of the statute (R. S., Sec. 843), allowing an appeal from the determination of the board in any contest proceeding.

17. The failure of the parties to a contest proceeding before the State Board of Land Commissioners to file pleadings in compliance with the rules of the board cannot be raised for the first time in the Supreme Court on appeal.

18. Where a contest proceeding is heard before the State Board of Land Commissioners in the absence of pleadings, and is thereupon decided on the merits, without objection on the ground of a disregard of the rules of the board requiring pleadings in contest cases, a compliance with the rules is held to have been waived.

[Decided June 25, 1902.]

Error to the District Court, Carbon County, Hon. David H. Craig, Judge.

This was an appeal from a judgment of the District Court affirming a determination of the State Board of Land Commissioners in awarding a lease of state lands. The facts are stated in the opinion.

*McMicken & Blydenburgh* and *N. E. Corthell,* for plaintiff in error.

The first controversy in the case arose over the meaning of the word "renew" in Sec. 815, R. S., it being contended that this did not import a new lease *at the same rental.* This proposition, however, we understand to have been abandoned, as it certainly ought to have been, there being no conflict in the authorities on the question, and no reasonable doubt as to the meaning of the word "renew." (Steen v. Scheel, 46 Neb., 252; Daniels v. Straw, 53 Fed., 327; Rutgers v. Hunter, 6 John. Ch., 215; Cunningham v. Pattee, 99 Mass., 252.)

The charge of fraud in obtaining the lease of 1895 is one which the lessee was certainly entitled to have formulated in some definite tangible manner and an opportunity to be heard upon it before any decision concluding his rights. It affected the validity of his original lease, which could not be decided without a hearing. (State v. Board, 7 Wyo., 487; Delles v. Bank, 7 Wyo., 73.)

The board based its action, in part, upon the finding "that Cooper is a foreigner residing in England and has never been a resident of Wyoming." It is submitted that this proposition, if true, is not a valid ground for denying him his contract right of renewal under the statute. Its bearing upon his rights is not clearly pointed out in the proceedings or in the decision, but we assume that it is intended to raise the question of alienage and consequent incapacity to take or hold real estate. There are several reasons why this objection cannot hold good. In the first place, alienage is a fact to be proved by him who asserts it. (Moore v. Wilson, 18 Tenn., 406; Gilman v. Thomson, 11 Vt., 643.) In the second place, in order to divest the title of an alien, inquest of office is necessary by the proper authorities. (Doe v. Robertson, 11 Wheat., 350; Cross v. DelValle, 1 Wall., 1; Osterman v. Baldwin, 6 Wall., 116; Bogan v. Mort. Co., 63 Fed., 197; Gilman v. Thomson, 11 Vt., 643.) Inquest of office in this State is a direct proceeding instituted by the prosecuting attorney of the county. (R. S., 2307.) In the third

place, the State is precluded by its grant from questioning the capacity of the grantee to take and hold the thing granted. (Doe v. Robertson, 11 Wheat., 350.) In the fourth place, the leasehold interest of Cooper, being an estate for years and less than a freehold, is chattel property and not real property. (2 Blackstone, 143; In Re. Gay, 5 Mass., 419; Bisbee v. Hall, 3 Ohio, 449; Brewster v. Hill, 1 N. H., 350.)

The fifth finding of the board, "that Cooper's application was not based upon any claim of right," does not seem to have any significance. Neither the statute nor the rules of the board contain any regulation or point out any particular method for the assertion of a renewal right of this character. It is not denied that Cooper held the lease or that he did file an application in the usual form for a new lease. His claim of the renewal right was seasonably made known to the board, and was fully sustained by evidence upon the hearing. It would seem to be clear, therefore, that Cooper's application was distinctly based upon his specific claim of the right of renewal, before the board acted upon the matter. If his application to amend was in any way essential it had relation to the time when his original application was first filed. (Johnson v. Woodworth, 18 Wash., 243.)

"The power to refuse to renew or lease, or to sell the lands or to lease them to any other parties," is expressly taken away by statute (R. S., 815) in all cases of the class to which this belongs. Indeed, an affirmative duty would seem to be laid upon the board, rather than upon the lessee, in such cases. (Carrington v. Harris (Tex. Civ. App.), 50 S. W., 197.)

There remains to be considered only the last proposition raised by the board, viz., that Cooper's claim for a renewal on the ground of reclamation of the land is not such a claim as would give him the right to renew under R. S., 815, because he "had not complied with R. S., 815, in irrigating 40 acres in each 160 acres of said land, nor had he provided suitable ditches for its full and complete reclamation." This objection is to be considered in the light of the evi-

dence offered upon the hearing. The real point involved in the board's objection, though not so expressed, is that the irrigation shown by the lessee, though covering more than 200 acres of the 640 embraced in his lease, is not distributed in separate 40-acre tracts in each technical quarter section.

It would seem clear, from an examination of the legislation regulating the leasing and other disposal of the state lands, that it was the purpose and policy of the State to give a preference to settlers and those who have improved the public lands; to encourage settlement and improvement; to give the settler or lessee the full present benefit of his improvement and expenditure. This is shown (a) by the general right of renewal awarded to the lessee on condition of agreement with the board as to the valuation (R. S., 812); (b) by protecting the owner of the improvements against a lease of the land to any other person without full and fair compensation to the owner of the improvements (R. S., 817); (c) by the preference of actual settlers as purchasers in case of sale (R. S., 819); (d) by giving a preference right to the lessee on the sole condition that he irrigate and reclaim and procure a full and adequate water supply for one quarter of the land included in his lease (R. S., 815); (e) by extending a preference right to the lessee on the sole condition of his establishing a reservoir upon the land. (Laws 1901, p. 92.) These provisions clearly establish a definite policy on the part of the State, which it is the duty of the executive and the courts to follow and enforce. (State v. Forest, 8 Wash., 610.)

This legislative policy and the several provisions of the statute necessarily enter into the terms of every contract or grant made under them and the obligations of such contracts cannot be impaired even by a subsequent act of the Legislature. (Blum v. Fristoe (Tex. Civ. App.), 46 S. W., 658; Fletcher v. Peck, 6 Cranch, 87; State v. McPeak, 31 Neb., 139; State v. Thayer, 46 Neb., 137; State v. Commissioners, 4 Wis., 432.) Where preference rights to purchase are secured to improved lands such lands are ex-

cepted from the operation of general laws providing for the sale of lands to the first applicant. (Oliver v. Dupee, 16 Wash., 634.)

Where one has the preference right tó buy the land the commissoner has no discretion to refuse a sale to him. (Burnett v. Winburn (Tex. Civ. App.), 25 S. W,. 969; Watts v. Wheeler, 10 Tex. Civ. App., 117.)

Under analogous provisions, in the constitution and laws of Texas, to the provisions of our own statutes, before cited, it is held that, in order to bar a settler of. his preference right to purchase, an affirmative duty is laid upon the commissioner, and he must make, in good faith, an offer to sell to the settler, and there must be a rejection on the part of the latter before he can be deprived of his right, and even knowledge on the part of the settler that the lands are for sale is of no significance. (Carrington v. Harris ('Tex. Civ. App.), 50 S. W., 197; Baker v. Dunning, 77 Tex., 28; Perego v. White, 77 Tex., 196.)

, A careful reading of the language of Section 815 in connection with the other germane provisions of the statute, and in the light of the physical conditions of the lands, the rights to be secured, the objects to be accomplished and the encouragement held out to those who would improve the state lands, can leave the court in no doubt as tó the meaning of the Legislature. Even if there were anything in the language itself literally importing that the irrigation should conform to the lines of sections and subdivisions, the court, having in view the nature of the undertaking and the well known topographical conditions and the natural laws and limitations controlling the disposition and use of running water, would hold these conditions to modify and limit the meaning of the statute. "The intention of the lawmaker will prevail over the literal sense of the terms, and its reason and intention will prevail over the strict letter. When the words are not explicit, the intention is to be collected from the context; from the occasion and necessity of the law; from the mischief felt and the remedy

in view, and the intention is to be taken or presumed according to what is consonant with reason and good discretion." (1 Kent, 64; Sutherland, Stat. Construction, 240-41.)

The language of the statute does not call for the technical interpretation insisted upon by the board. (Henshaw v. Foster, 26 Mass., 312.) The administration of the land department of the United States furnishes abundant illustration upon this point. (See R. S., U. S., 2259, 2289; Act March 3, 1877 (19 Stat., 377); Act June 14, 1878 (20 Stat. L., 113).

The history of the interpretation of the Desert Land Act is especially instructive in this connection. Not only has it been the uniform practice to allow an entry to embrace a portion of several sections, but in construing the clause requiring the entryman to reclaim "the land entered" it has never been insisted that he must reclaim it all, though the expression is clearly capable of that literal meaning. It was early ruled by the department that the non-irrigable character of a portion of the land will not defeat the right to patent, if the land reclaimed in good faith and the remainder is of no value to the government. (John G. Coy, 10 L. D., 495.) And that it is of no consequence to the government whether the non-irrigable land is situated in one or more of the smallest legal subdivisions. (David Gilchrest, 8 L. D., 48.) And that ten acres reclaimed out of 80 acres may be sufficient to patent the whole. (William Crusen, 11 L. D., 277.)

But it is literally true that the lessee in this case shows irrigation of 40 acres in every 160 acres, if the lines be drawn from north to south across the entire section, as will appear from an examination of the evidence and plat submitted.

Moreover, if the interpretation adopted by the board were the true one, and one justified or required by the terms of the statute, this would affect the right of renewal as to the northwest quarter only, and would not impair the right as

to the other quarter sections. (Fairbanks v. Lamkin, 101 Cal., 520.)

The argument in favor of a fair interpretation of the contract between the State and the lessee is merely the general argument applied to the interpretation of all contracts. A party to a contract is held to a reasonable substantial performance rather than a literal one, and may perform in a manner convenient to himself. (1 Addison on Contracts, 318; Pallman v. Smith, 135 Penn. S., 188; Meincke v. Falk, 61 Wis., 623; City v. Bridge Co., 90 Ky., 193; Bishop on Contract, 605.)

What is there in this contract to distinguish it from any other? What, indeed, unless it be its exceptionally favorable terms toward the State? Leases for improvement, with ground rents reserved to the fee owner, usually run for a much longer period—ninety-nine years in most instances. The rents are not based on the improved value, but upon a conservative ground value. The reversion of the improved property at the end of the term is a substantial consideration to the owner. In the case of these irrigated lands the State, after receiving the full value of the use of the ground in its native state, gets it back in an improved and cultivated state, with fences, ditches and water rights of a value many times greater than the original. The lessee, to be sure, profits by his labor. Why should it not be so? This is the inducement to the improvement of the property. Without the inducement held out to him by the law of his lease, he could not be expected to expend his labor and his money. Is it reasonable that the State should claim the benefit accruing to both parties? Ought the lessee to multiply the value of the property several times for the ultimate profit of the lessor and meantime pay interest on his own investment?

*F. Chatterton* and *J. A. Van Orsdel,* Attorney General, for defendant in error.

While it is possible the question may not here be raised for the first time, it is thought proper to at least call the

court's attention to the fact that the question was not pre-
sented to the commissioners in the nature of a *contest,* as is
provided for by statute and the rules of the commissioners.
Section 837, R. S., clothes the commissioners with authority
to establish rules for the presentation to it of questions for
determination. Rules were adopted on January 5, 1899,
providing for "contests and protests," prescribing the method
of procedure. No such procedure was had in this case. No
appeal from the determination of the commissioners is pro-
vided for, except in cases of "contest proceedings." (Sec.
843, R. S.)

In the proceeding before the court below no evidence was
introduced by the appellant, plaintiff in error here, he evi-
dently relying upon what the record contained in his behalf;
and the appellee, defendant in error here, considering that
nothing further was necessary on his behalf to establish his
position than appeared in the record, offered no further evi-
dence. The court below having heard and decided the ap-
peal entirely upon the record from the Board of Land Com-
missioners, it will be more convenient, and probably quite as
proper, to discuss the case here upon the facts and circum-
stances presented to and in the knowledge of the board, and
upon which it based its determination. But before we take
up the facts in the case, let us briefly consider what the duties
of the board are, as between the State and individual citizens,
and, also, the statutes controlling their action: First—Sec-
tion 813, R. S., as amended by Chapter 71 of Session Laws
1901, provides that the board *"shall,* giving preference to
citizens and taxpayers, lease all state lands to such parties as
shall· inure to the greatest benefit and secure the greatest
revenue to the State." This the commissioners have done,
not only in this case, but all others, while at the same time
they have endeavored to do equity as between contesting
citizens; but where equity between two citizens interferes
with justice, and the requirements of the statute, as between
the State and a citizen, the board has considered that the
State's rights—that of all the citizens—were paramount to

the individual claims of one citizen, and has, in such case, followed the letter of the law. Second—Section 812, R. S., provides as to the method of obtaining renewals: "At any time within ninety days next preceding the expiration of the lease the lessee, or his assigns, shall notify the register of his desire to *renew* the lease." In the case at bar there was no expression of a desire to *renew* a lease. The application was for a lease; there was nothing upon its face or before the board to indicate that it was for a renewal under any claim of right. Third—Section 818, R. S., provides for the cancellation of leases upon proof that same was obtained by fraud, deceit or misrepresentation. Fourth—Section 815, R. S., is the only statute limiting the powers of the commissioners to refuse to renew a lease.

It is to be regretted that this case was not originated before the board by regular contest proceedings, and, on appeal, tried *de novo* by the introduction of evidence originally before the court below. It, therefore, becomes necessary to here state—in order that a thorough understanding of the case may be had—facts of which the board had knowledge, but which do not appear in the record; and in this connection we desire to say the board has, in its consideration of such cases, thought, and found it to be true, in order to act with the greatest intelligence, for the best interests of the State and with the most justice and equity to citizens, that it not only had the right, but that it was its duty, to obtain full information from any and all sources at its command, and has, therefore, in all such cases considered facts brought to light upon its own motion, but which were not offered by either of the contending parties.

The plaintiff in error, Cooper, by his attorney in fact, Harrison, filed an application to lease the section in controversy, placing a valuation of $1.25 per acre upon the land, making a rental of only $35 per annum. Before the application was reached for consideration by the board, in due course of business, an application for the leasing of said land was filed by the defendant in error, McCormick, placing a value of $3 per acre upon the land.

In accordance with the rule of the board · in such cases, both parties were called upon to file sealed bids. Cooper failed and refused to bid. McCormick filed his bid, valuing the land at $3 per acre, which would bring a rental to the State of $96 per annum, or nearly three times as much as Cooper offered in his application. Cooper's attorney asked to be heard on the ground that he was entitled to the lease as a renewal under Section 815, R. S. This was the first intimation the board had of any such claims on the part of Cooper. The hearing was had on April 8th, 1901, and upon the testimony of Cooper's attorney in fact and the State Engineer, it was shown that Cooper had not complied with the requirements of said Section 815; that while a water right had been granted to Heber & Murray in 1888 for the northwest quarter of the section, Cooper had not acquired same, and had not in any way attempted to reclaim said northwest quarter, although it was susceptible of reclamation; there was no claim on the part of Cooper that the northwest quarter could not be reclaimed. The evidence before the board showed that it could be. These facts proved to and convinced the board that Cooper had not complied with the requirements of Section 815 in this, that he had not "reclaimed the land by irrigation;" and had not "provided suitable ditches for its full and complete reclamation;" and had not "secured an adequate and perpetual water supply for said land;" and had not "continuously irrigated and cultivated forty acres *in every 160 acres.* of said land," in that he had not acquired any water right for, constructed any ditches upon, or in any way irrigated or cultivated the northwest quarter of said land. Upon further investigation by the board of its records in past years, it was found that, although said land had been leased to said Cooper and one Marsh upon their sworn statement that it was worth $2.50 per acre in October, 1891, the said land was again leased to Cooper in December, 1895, upon his sworn statement that it was only worth $1.25 per acre, and it now appears, by the sworn application of Mc-

Cormick, that the land is worth $3 per acre, while Cooper still states it is only worth $1.25 per acre. These facts would certainly, at the very least, tend to prove, if not fraud, at least deceit and misrepresentation on the part of Cooper in obtaining his lease, which he now seeks to "renew," and was a proper fact for the board to take into consideration under the provisions of Section 818, R. S. It was also proven that Cooper was not a resident or citizen of Wyoming, but a British subject residing in England, a proper fact for the board to take into consideration, together with all the other facts in the case under Section 813, R. S. It also appears from the application of Cooper that he did not "within ninety days next preceding the expiration of the lease—his first lease—notify the register of his desire to *renew* the lease," as is expressly provided for in Section 812, R. S., and did not make any claim of right, under Section 815, R. S., or in any way establish, upon the hearing or otherwise, any right under the provisions of said section.

We call the court's attention to the fact that no exception was taken to the findings of fact set forth in the board's opinion, and upon which its decree was based, either before the board before appeal taken, or in the court below by the introduction of evidence in controversion thereof, although opportunity was given to and the right existed in the appellant, plaintiff in error here, so to do. We, therefore, contend that such facts so found by the board upon its investigaton of the case must be taken as true; and, being true, sustain the board and the court below in the decision here questioned.

This question of right of renewal at same rental did not in any way enter into the case. The case rested upon the question whether or not the plaintiff had any absolute right to renew; the board found against him, so the question of the amount of rental was never considered; if the board had found such right of renewal, as was contended for, the question of valuation for rental purposes would then have been proper for its consideration, but not until renewal right was established.

The application for a renewal of·a lease must be made in such way as to bring to the notice of the board the fact that it is an application for a renewal. (Sec. 812, R. S.) It is not to be presumed that the board must ascertain, of its own motion, the desire and claims of the lessees of state land. It is the lessee's duty to apprise the board of any rights claimed, and if a right is claimed under the provision of Section 815, R. S., it is certainly the duty of the applicant to make it known in his application, so that the board may know upon what it is called upon to pass.

This action largely rests for its proper determination— as does also a question which will very materially affect the financial interests of the State Treasury, upon the construction placed upon Sec. 815, R. S.

The board has, acting, as it believed, in the best interests of the State, construed said section· to mean just what it upon its face, in plain words, says. The first act relative to this board, Sec. 792, R. S., says, among other things, with regard to the management of the state lands, "And shall manage the same to the best interests of the State." And Sec. 813, R. S., as amended Laws 1901, prescribes the manner of such management, to-wit: "In such manner and to such parties as shall inure to the greatest benefit and secure the greatest revenue to the State." The whole tenor of the legislation on this subject not only in the leasing but in the selling of the State's lands, seems to be with a view to getting as much revenue for the state as possible. It would, therefore, seem to be the duty of the board in all cases, where it has authority so to do, to lease lands to those making the highest offer of rental therefor, and that it was intended that the board should do so; even when improvements have been placed on the land by a former lessee who has failed to secure a renewal, either through neglecting to apply for renewal, or by reason of not being willing to pay as high a rental as some other person; provision is made for an equitable disposition of the improvements, so the former lessee may depart whole. (See Sec. 817, R. S.) In

the case at bar, the requirements of this section having been complied with, lease was issued to McCormick.

The only statutory limitation upon the right of the board to refuse to grant a lease is contained in Sec. 815, R. S., and the right of calling into effect the restriction of that statute rests entirely upon the complete performance of certain acts, therein specifically set forth, by the party invoking its aid.

The lease was for the entire section of land and the conditions of said statute applied to the entire tract, and the contention of Cooper that the interpretation of the statute by the board "would only affect the right of renewal as to the northwest quarter, and would not impair the right as to the other quarter sections," is not tenable. The right of the board to control the leasing gives it the right to say what portions shall be leased to a lessee, and when a lease is given of a tract the lessee takes it under the conditions imposed by the board and the statute, and he cannot, against the wishes of the board, say that the conditions apply to one part of the land and not to the whole, for he accepted the lease with its conditions as to the whole. The conditions were not impossible as to the whole tract, so the rule contended for by Cooper as to "substantial performance" does not apply. Very many circumstances may be conceived by reason of which it would militate against the State's revenue interests to allow one to dictate to the board the breaking up of tracts of land into several parts, as the leasing of one part desired might prevent the leasing by the State of the remainder, and so the lessee obtain the use of the whole by paying a small rental for a part. In this case the "letter of the contract" is also the "spirit" of it, neither of which has been "substantially" complied with.

. The plaintiff in error contends that because 40 acres is one-fourth of 160 acres and he has irrigated and cultivated an amount of land in the section—although not in each 160 acres of the section—equal to one-fourth of the section, he has complied with the spirit of the law. It would be just

as reasonable to say that where one having a lease for an entire section of 640 acres, had irrigated and cultivated the southwest quarter thereof, 160 acres, he had complied with all the requirements of the law necessary to entitle him to a renewal. The idea of the statute is to get all the land improved and so enhance its rental value as rapidly as possible; this would not follow if the contention of plaintiff in error were true. If the idea of the legislature had been that suggested by the plaintiff in error, it could have been very easily expressed, not leaving any room for doubt as to such intention, and it is more reasonable to believe, than not, that had such been the legislative intent, it would have been so expressed. The statute was enacted by men accustomed to think of and refer to 160 acres as a quarter section, or a quarter section as 160 acres, or 160 acres as embracing four of the smallest legal subdivisions recognized by the U. S. land department, namely 40 acres. The idea of legal subdivision as a controlling factor in the management of the State's lands runs through the entire act regarding lands. Sec. 806, R. S., provides, "the board may lease any legal sub-division, etc." Sec. 819, R. S., regarding the sale of land, provides, "The board shall sell any such lands according to the subdivisions or sections as established by the United States survey thereof," and the next section, 820, giving preference right to settlers to purchase, says, "not exceeding 160 acres."

Legal subdivisions of land recognized by the U. S. surveys and land department are sections, quarter sections, and quarter of quarter sections; also, where, by reason of the earth's curvature, a quarter quarter section is more or less than 40 acres, it is called a lot. The board is everywhere directed to deal with the state lands in legal subdivisions. We therefore contend that the expression "at least 40 acres in every 160" acres, in Sec. 815, R. S., means that where one has a section leased he must irrigate 40 acres in each quarter of that section.

Plaintiff in error calls attention to the Homestead and

Desert Land Laws, as bearing out his contention that they are not given a technical construction. But they do not have that effect. The language is differently qualified.

POTTER, CHIEF JUSTICE.

In this case we are called upon to review the action of the District Court of Carbon County in affirming a decision of the State Board of Land Commissioners ordering that a lease of certain school lands be issued to the defendant in error, and refusing to renew the lease of plaintiff in error for said lands. Upon an appeal from the determination of the state board to the District Court, that court affirmed the acton of the board, and Frank Cooper, the appellant, brings the matter here on error.

The lands affected are located in Carbon County, and described as section 16, in township 19 north, range 78 west. Cooper held a lease of the land, from the State, dated January 17, 1896, and running for the period of five years from January 10. That lease, therefore, expired by limitation January 10, 1901. An application to again lease the same lands was filed with the board by Cooper December 1, 1900, and was accompanied by the affidavit required by the board showing certain particulars concerning the land, its character, the improvements thereon, and an opinion as to its value for rental purposes.

January 15, 1901, John W. McCormick, the defendant in error, also filed a petition applying for a lease of the lands, which was accompanied by his own affidavit. Upon the filing of this petition, it appears, from the records of the board, that on the same date it was considered in connection with Cooper's application, and it was ordered that both applicants be called upon to file sealed bids for the leasing of the land. In obedience to an order upon the parties to appear at a stated time and offer whatever evidence they desired, the parties appeared at the time fixed, and testimony was introduced on behalf of the Cooper application. Cooper at the same time applied for leave to amend his petition by

stating therein that it was for a renewal of the original lease, and that it was based upon the fact that about two hundred acres of the land had been fully irrigated and reclaimed by the lessee before the expiration of his former lease, and that he had constructed suitable ditches and obtained a permanent water right for the full and complete reclamation of the land. On the same date McCormick's sealed bid filed by him was opened, and it was found that he had placed a value of three dollars per acre on the section, making the annual rental $96. In the application of Cooper the value was placed at $1.25 per acre.

May 11, 1901, the board rendered its decison, and, in addition to the facts already stated, found the following: That said section was leased to Marsh and Cooper—Cooper being the present applicant—in 1891 upon a valuation of $2.50 per acre (that said parties had monopolized the use of said land for nine years prior thereto without paying rent therefor); that in 1895 said land was leased to Frank Cooper upon a valuation of $1.25 per acre, made upon the affidavits of F. O. Harrison, as attorney in fact for Cooper, and one E. Percy Palmer; and that the same was a fraud upon the board; that Cooper is a foreigner residing in England, and has never been a resident of Wyoming; that he had failed and refused to present a sealed bid, as ordered by the board; that his application was not based upon any claim of right, as appears on its face; that the claim of right made at the hearing is not such a claim as would give him a right to renewal under Section 815, Rev. Stat., for the reason, first, no valid claim was made under the statute in the application; second, fraud was practiced on the board in the statement of the value of the land made in the application, and, third, the testimony showed that Cooper had not complied with the requirements of Section 815 in irrigating forty acres in each and "every one hundred and sixty acres of said land," nor had he "provided suitable ditches for its full and complete reclamation."

Thereupon the application and bid of McCormick was

accepted and a lease ordered issued to him upon satisfactory
proof of his compliance with the requirements of Section
817, Revised Statutes, which required a lessee to pay or
tender to the owner of improvements on the land the value
thereof. The application of Cooper was rejected. The
reasons for the action thus taken are written in the records of
the board as follows:

"No right, under the provisions of Section 815, Revised
Statutes, having been established by Cooper. Fraud having
been practiced by Cooper in his representations as to the
rental value of the land in his application. Cooper being a
citizen of a foreign country. (Chap. 71, Ses. Laws 1901.)
Cooper refusing to bid, as required by the order of the
board. And it appearing to the board that it will inure to
the greatest benefit and secure the greatest revenue to the
State."

In the District Court the matter was heard upon the
original papers and affidavits, and the evidence adduced
before the board. The fact, if it be a fact, that Marsh and
Cooper had occupied or monopolized the premises for sev-
eral years prior to the lease issued to them in 1891, is not
decisive of the controversy, and can have no substantial
effect upon the respective right of the parties from a legal
standpoint. It is not now urged as a valid objection to the
renewal of Cooper's lease; and we apprehend that it was
mentioned among the reasons for the action of the board,
more by way of moral support of the conclusion reached
than as constituting a legal ground therefor. It is not
perceived how the fact can have the effect to deprive Cooper
of the right claimed after he had leased the land and paid
rental therefor under two separate leases of five years each,
he having been associated with Marsh in the first lease.
Trespass upon state land, by its occupation without lease
or certificate of purchase, is made punishable by fine. (R. S.,
Sec. 838.) But the statute does not impose as a penalty the
forfeiture of any right to take a lease of the premises. It is to
be said, moreover, that neither the evidence nor the records

of the board before us, outside the findings, show the occu-
pation of the land by said parties for nine years anterior to
the lease of 1891, further than the showing in the testimony
of the State Engineer that one of the Cooper ditches car-
ried an appropriation of water as made in 1882, and another
an appropriation dating from the spring of 1889.

The only evidence upon the question of the alienage of
Cooper is found in the testimony of F. O. Harrison, who, as
his attorney in fact, made and filed his application, and who
stated when being examined as a witness that Mr. Cooper
was not a citizen of Wyoming; and in a statement in the
application of McCormick that Cooper lived in England
and was not a citizen of this country.  Conceding that
enough appeared to establish the fact that Cooper was a
non-resident alien, it does not seem to be contended that he
is on that account incapable of taking a lease of state lands,
nor is any reason pointed out in the brief of counsel for de-
fendant in error why the fact of alienage should control in a
determination of his right to renew his lease, other than a
reference to the provisions of Section 813, Revised Statutes,
as amended in 1901.  That statute provides that the board
shall lease all state lands in such manner and to such parties
as shall inure to the greatest benefit and secure the greatest
revenue to the State.  Provided, that preference shall be
given to the applications of those parties who are citizens
and taxpayers of the State.  (R. S., Sec. 813; Laws 1901,
p. 75, Chap. 71.)  It was not intended, we think, to so pro-
vide that in all cases and under all circumstances where
there should be more than one application to lease state
land, the application of an alien or non-taxpayer should be
rejected in favor of a citizen or taxpayer, nor is the statute
entitled to that technical construction.  The preference pro-
vided for is evidently to be followed by the board only where
other things are equal.

In ordinary cases the board is vested with a wide discre-
tion in the matter of renewing leases.  (R. S., Sec. 812.)
That discretion is doubtless to be exercised reasonably, rather

than arbitrarily, and with a due regard to the rights of the lessee, as well as the interest of the State, taking into consideration all the statutory regulations relating to the leasing of state lands. It is probable, however, that the discretion is such that, except in case of fraud or grave abuse resulting in manifest wrong and injustice, the courts would not feel warranted in interfering with its exercise.

The right claimed by the plaintiff in error is not based upon the provisions of Section 812, altogether, but it is maintained on his behalf that he is entitled to a renewal of his lease as a matter of absolute right by virtue of his compliance with the provisions of Section 815, Revised Statutes. That section of the statute confers a right of renewal upon a lessee who shall have reclaimed the land leased by him by irrigation. It reads as follows:

"Sec. 815. The power given to the board to refuse to renew, or lease, to sell the state lands at the expiration of a lease, or again to lease to other parties than to the original lessee, shall not apply in the following case: Whenever the original lessee of the state lands, or his assign, shall have, during the period of his lease or prior thereto, reclaimed the same by irrigation, and shall have provided suitable ditches for its full and complete reclamation, and shall have secured an adequate and perpetual water supply for said land, then in that case the original lessee shall have the right to renew such lease for a term of five years, which renewal may be repeated for the same period five years thereafter, and may again be repeated for the same period ten years thereafter, making a total period not to exceed twenty years. Provided, That each of said renewals shall be dependent upon the continuous irrigation and cultivation of at least forty acres in every one hundred and sixty acres of said land, and in case the lessee shall have failed to cultivate the said land, then said board shall have the authority to refuse to renew the lease as provided in this chapter."

The following section (816) provides that, "All water rights which shall have become appurtenant to the lands

leased aforesaid shall, upon the expiration of the leases given to the lessee who made the irrigation and improvements thereto, become the property of the State, and shall not be considered as improvements, which any subsequent lessee or purchaser thereof shall be obliged to reimburse or pay such original lessee who made such improvements thereon."

It appears from the testimony adduced at the hearing before the board that through the efforts of Cooper one hundred and sixty acres of the leased tract have been made meadow land, and that two hundred acres have had water thereon by means of irrigation. The irrigaton works consist of dams and two ditches, the latter being named respectively as "Harrison 7 L. Big Field Ditch" and "Harrison No. 6 Ditch." It was testified that the ditches are suitable and adequate for all the land that can be got under water (with the probable exception of the northwest quarter of the section) ; and that the meadow land had been generally increasing in extent, but that for the last two or three years the lessee had been unable to get any new land under water. It appears also that a permanent water right by means of the irrigation works aforesaid had been secured through a final adjudication of the State Board of Control, based upon the diverson and appropriation of the water and the irrigation thereby of parts of the land in controversy. The water right under the first named ditch is shown to have been allowed for sixty-five acres of land situated in the northeast quarter section of the land; and under the other ditch for eighty acres in the southwest quarter, and sixty acres in the southeast quarter. The aggregate quantity of land connected with the appropriation of water as allowed by the proper state authorities, therefore, amounts to two hundred and five acres.

It seems that a water right had been adjudicated in favor of other parties not interested in this controversy for one hundred acres of land in the northwest quarter section. But it is not shown that said parties have continued the irrigation of that part of the land, or have been in possession of the

land since its lease by the State; nor is it shown that any other party has acquired the water right aforesaid. It is clear, therefore, that the plaintiff in error cannot claim any benefit from the irrigation of said northwest quarter of the land; and the fact that there had been an appropriation of water therefor can have no effect in this controversy, except as tending to show, possibly, that such portion of the land was susceptible of irrigation.

In addition to the irrigation of the land as aforesaid by plaintiff in error, it is shown that he owns two miles of fence on the land running along the west and north sides thereof, and a beef corral located in the northeast quarter. In his application the value of the improvements, which we assume to include the dams and ditches, as well as the fences and corral, is stated to be $650. In the McCormick application the value of the improvements, including only the fences and corral, is placed at $100. The map filed as a part of the McCormick application shows one hundred and ten acres of meadow land, in the southwest quarter and northeast quarter of the section, and makes it to appear that, with the exception of eighty acres of pasture in the southwest quarter, the rest of the land is liberally covered with trees and brush. His map does not show or indicate any meadow or irrigated tract in the northwest quarter. The defendant in error did not offer any proof to controvert the fact of irrigation and reclamation, as shown by the evidence submitted on the part of plaintiff in error.

The main question then to be determined is whether the reclamation by irrigation, and the cultivation by Cooper of the quantity of land aforesaid and located, as above stated, is sufficient to entitle him to a renewal of his lease under the provisions of Section 815. And the determination of that question depends upon the proper construction of the statute. The divergence between the views of counsel for the respective parties is very clearly defined. It is contended on behalf of the defendant in error, and in support of the decision of the board, that the statute requires as a condition

to the right of renewal' that at least forty acres shall be irrigated and cultivated in every technical quarter section of the land covered by the lease, or, in other words, that the term or phrase "in every one hundred and sixty acres of said land" refers to and means the largest legal subdivision of a section of land according to the United States survey, known technically as a quarter section, which ordinarily consists of one hundred and sixty acres. On the other hand, it is insisted that the statute is not to be so construed, but that its provisions are complied with, and a right of renewal conferred, whenever the quantity of land irrigated and cultivated equals or exceeds forty acres *for* every one hundred and sixty acres embraced in the lease, regardless of the location of the irrigated tract, except that it must be located somewhere on the land covered by the lease. It is further contended by counsel for plaintiff in error that, even should the statute be construed as the board have construed it, he would be entitled to a renewal of his lease for the three quarter sections within which the reclaimed land lies, there being forty acres and more of reclaimed land in each of these quarter sections. Counsel also states that, according to the map in evidence, it appears that a division of the land into four parts of one hundred and sixty acres each by means of parallel lines running from north to south would show at least forty acres of irrigated land in each one hundred and sixty-acre tract so formed.

We do not understand it to be contended that it is necessary for a lessee seeking the benefit of the statute to show that all the land capable of reclamation has been irrigated and cultivated; but it seems to be conceded that the requirement contained in the *proviso* of the section for the irrigation of at least forty acres in every one hundred and sixty furnishes a criterion for the determination of the question whether in any case there has occurred such reclamation as to entitle a lessee to a renewal. Although the statute is rather inaptly expressed, we are inclined to the opinion that it discloses an intention to confer the right thereby granted when-

ever it appears that the quantity of land named in the proviso, viz., at least forty acres in every one hundred and sixty acres, have been continuously irrigated and cultivated, notwithstanding that a greater body of the land is reasonably susceptible of reclamation.

It must be confessed that the construction of the statute in the respect wherein counsel differ is beset with no little difficulty. Counsel have presented some strong reasons for the construction urged by them respectively. We have reached our conclusion upon a careful scrutiny of the doubtful language employed, in connection with the context, and the manifest purpose and policy of the statute, as well as the effect upon the lessee under the provisions of Section 816 at the termination of his lease or leases.

It is evident, we think, that the statute should be liberally construed. Its object is the encouragement of the improvement and reclamation of the arid lands belonging to the State through the individual efforts of its lessees by the expenditure of their time and means, the same eventually to accrue to the benefit of the State. The permanent water right that may be secured by a lessee is declared to become the property of the State upon the final termination of the leases authorized by the statute, in consideration of the unusual privilege accorded the lessee in such a case. We are of the opinion that an intention appears to deal liberally with a lessee who, by reclamation in the manner required, advances the permanent improvement and value of the land. That intention is made the more manifest by an inspection of the recent enactment of 1901 conferring a similar right of renewal upon a lessee, who shall during the period of his lease construct upon the land leased a reservoir or well, with the necessary pumping and distributing machinery, for the purpose of watering live stock, and of the value of two hundred dollars, the additional condition of each renewal in such case being only that the well and reservoir is maintained and used. (Laws 1901, Chap. 82, p. 92.)

Now, it is clear that a lessee might be put to as great an

expense in reclaiming and cultivating a large tract of land compactly situated, as if the reclaimed land consisted of several smaller tracts separated from each other and located in different technical quarter sections of the land. Moreover, no fact is better understood in relation to the subject of irrigation in this region of country than that it is practically impossible to conform to section lines or quarter section lines in bringing a tract of land under water and consequent cultivation. That matter is controlled by the character of the surface of the land. To be successfully irrigated at reasonable expense through individual enterprise the land must lie sufficiently low and level to accommodate the construction of serviceable ditches, and promote the flow of water upon it and its proper absorption. Much of our land is hilly or rocky in places, and in a particular section of land as described by government survey, the only portion capable of being irrigated and cultivated is very apt to lie in one body. At least, it is safe to say that the case would likely be exceptional where it would be practicable to successfully irrigate and cultivate forty acres in each technical quarter section. The strict construction of the statute insisted upon would require us to say that the Legislature intended to extend the provisions and benefits of the statute to those lands only that are so situated as to permit the irrigaton of a tract comprising forty acres or more in every quarter section; and to deny its application to a section of land not so situated, although a large portion of it could be rendered valuable as improved and irrigated land. The Legislature, no doubt. has the power to so provide. It may limit the application of the privilege as closely as it may see fit; but not having done so in unmistakable language, we conceive it to be the duty of the court to give to the somewhat uncertain expressions as broad and liberal an interpretation as they will admit of, consistent with the spirit, purpose and manifest policy of the statute, and the conditions attending the reclamation of the wild and arid lands in this State.

The statute failing to state in specific language that each

quarter section must contain the required irrigated tract of forty acres, we should hesitate to conclude that it was so intended, and that the irrigation and cultivation of one hundred and sixty acres in a section of six hundred and forty would be insufficient to entitle a lessee to a renewal; and that the valuable water right obtained for the purpose honestly and in good faith should be forfeited to the State; while another lessee by the comparatively paltry outlay of two hundred dollars in constructing a well or reservoir with appropriate machinery could secure his land for an aggregate period of twenty years.

We cannot agree with the proposition that literally the phrase "in every one hundred and sixty acres of said land" refers only to a technical quarter section. Four contiguous forty-acre tracts described according to legal subdivisions located along one side of a technical section of land constitutes one hundred and sixty acres. We are quite willing to concede, however, that if the phrase should be *literally* interpreted as if standing alone the statute would require the irrigation and cultivation of at least forty acres *in* every one hundred and sixty-acre *tract,* although, in our opinion, each one hundred and sixty-acre tract even then would not necessarily be confined to the largest legal subdivision of a section known technically as a quarter section. Under that literal construction any division of the land into one hundred and sixty-acre tracts, according to legal subdivisions, would answer the requirement. But we do not think the phrase in question was used literally, nor that it should be construed literally. The Legislature did not, in our judgment, so intend. Such an interpretation would operate to render a statute adopted in pursuance of a wise, broad and beneficient policy, of very limited application, and of little use. When so understood, its benefit to the State would be small, while it would work injustice to individual lessees who have acted upon and complied with its apparent spirit and policy.

The argument for the construction that the required irrigation must exist in each technical quarter section seems to

assume that every leased tract of one hundred and sixty acres. or more will comprise such a quarter section or be divisible into two or more; but we are not aware of anything in the law, nor any reason why it may not occur occasionally, if not frequently, that a tract of one hundred and sixty acres embraced in one lease may be parts of more than one technical quarter section, and that a leased tract of six hundred and forty acres may be formed by parts taken from several sections, so that there would not be in the tract four technical quarter sections, without departing in the least from the principle of leasing the land according to legal subdivisions. It is not difficult to perceive, in such instances, the impossibility of applying the strict construction insisted upon by counsel for defendant in error, and apparently followed by the board in this case. Yet we apprehend it would hardly be contended that the statute was intended to be inapplicable to such cases.

It is argued that the object of the law is to secure an increase in the value of all the land, and that the desired result will only be accomplished by a construction of the statute that will require at least forty acres located in each technical quarter of a section to be irrigated and cultivated; and that otherwise a section may be broken into several parts, so that in the future the State would be able to lease only the particular portion reclaimed and prevented from leasing the remainder. Were our conditons different, and the character and situation of lands in the State different, there might be much force in this argument. But we think the danger suggested as likely to follow from a liberal construction more imaginary than real. We believe that it is within the common experience in this region that an entire section of land acquires an enhanced value in consequence of the reclamation and cultivation of a part of it. Homeseekers here usually require grazing lands in connection with irrigable lands, and it is to be seriously doubted if the State will ever be found limited to the leasing of an irrigated portion only of a section of land which may have been subject to the provisions of this statute, however construed. Should

such a thing happen, it is not perceived how the interest of the State would suffer, as the rental could be fixed upon a valuation commensurate with the quality and condition of the land sought to be leased. In any event, the State will eventually come into control of the same quantity of cultivated land, and an adequate water supply therefor, whether the same be located in one large body or be separated into smaller tracts located in different quarter sections.

We are constrained to hold that the expression "in every one hundred and sixty acres of said land," as employed in Section 815 refers to quantity rather than to a technical quarter section, or to any particular tract or body of land. That construction we conceive to be more in harmony with the spirit and policy of the statute, and with the conditions attending the reclamation of land by irrigation in this State. In that sense we think the language was used, and only by such an interpretation, in our judgment, will the intention of the Legislature be carried out.

We are unable to agree with the conclusion of the board that the statement of the value of the land in the application of Cooper amounted to a fraud upon the board. Outside the two applications and the affidavits accompanying them, there was no evidence on this point, other than the fact that a former lease to Marsh and Cooper was issued upon the basis of a higher valuation. This fact must have been known to the board when the lease to Cooper in 1896 was granted, and notwithstanding that fact, the lease was granted to Cooper upon the valuation of $1.25 per acre. The affidavit submitted in connection with the last Cooper application is that of a third party, while McCormick's own affidavit accompanied his application. It seems unreasonable to hold that because one applicant fixes a higher valuation than another, the latter is guilty of fraud. The matter rests largely in opinion, and both may be entirely honest in their statements. The Cooper application did not conceal anything respecting the character and condition of the land.

It seems to have correctly shown, by the answers to the printed inquiries embodied in the blank application prepared by the board, and by the map attached thereto, the irrigation and improved situation of the premises.

But the statement as to value in the Cooper application may have been made upon the basis of the natural and unimproved condition of the land, while McCormick may have taken into consideration the fact that a part of the land has been reclaimed, and that if he should get the land he would obtain the benefit of the water rights. We are inclined to think that Cooper had a right to place the value upon the land that it had or would have had in the absence of the reclamation caused by his efforts. In any event, we are convinced that the circumstance that his opinion as to value differed from that given by the other applicant is not sufficient to convict him of fraud, there being no concealment or misrepresentation of material facts.

Another reason assigned for the rejection of the application of plaintiff in error is that it did not purport on its face to be an application for renewal under the provisions of Section 815. It is true that it did not appear by the application as originally filed that a right was claimed under the section of the statute aforesaid; but at the hearing and before the board acted an offer was made to amend the application so as to show the facts, and the board was then fully informed that a right of renewal pursuant to the statute was claimed, and that a renewal was desired. McCormick knew when he filed his application that the other applicant was the lessee, and had caused the land to be irrigated and improved. The section of the statute conferring the right to renew in cases of reclamation does not expressly impose as a condition that an application under its provisions shall be made within any stated time, and it is to be seriously questioned whether the provision as to the time for making an application for a renewal under Section 812 applies. Cooper, however, was known to the board as the present lessee. He applied to again lease the land; and the board was informed

of that desire within the time fixed by Section 812, although the application did not in ·terms state that it was for the renewal of a lease already held by the applicant. Unless a most technical construction should be given to the requirement of the statute that the board shall be notified of the desire of a lessee to renew his lease, an application by a lessee to again lease would seem to operate as such a notification, and as a substantial compliance with the statute. Possibly the board ought not to be required in every case to investigate the matter to ascertain whether the applicant already holds a lease, and should they act in ignorance of that fact on account of the silence of the lessee, the fault might be his, but it is evident that the most casual examination of the records would ordinarily disclose the fact. In this case, however, the McCormick application recognized Cooper as the lessee, and in both applications he was referred to as the owner of the improvements. It would manifestly be better practice for one desiring to renew a lease to make that fact distinctly to appear, but we are not prepared to say that to obtain the benefit of the provisions of Section 815, even if the requirement of Section 812 should be considered applicable, it is absolutely essential that the desire to renew, and the facts upon which the claim of right is based, should be clearly stated in the application, where such desire and the facts are made to appear prior to action on the part of the board. The board in this case was not misled into ordering a lease to McCormick by the omission from Cooper's application of a specific statement that he desired a renewal of his former lease, and claimed a right thereto by reason of his reclamation of the land, and we do not think his claim should be rejected on that ground.

An appeal is allowed by statute from the determination of the State Board of Land Commissioners rendered in any contest proceeding. (R. S., Sec. 843.) This proceeding before the board amounted to a contest. The two parties were applying for the same land. One claimed a right to have a renewal of his lease, and the other was evidently in-

sisting that a lease should be awarded him on the ground
of his higher bid. The board had adopted certain rules of
practice in contest cases requiring that the contestant
should file a complaint or petition, and the contestee an
answer; and where the latter contains new matter, a reply
is provided for. The time for filing such pleadings is speci-
fied, and when the matter is at issue the rules provide for
setting the contest for hearing. Counsel for defendant in
error advert to the absence of pleadings herein, and the
non-compliance with the rules of the board in that respect.
It is conceded that it is doubtful if the question can be raised
for the first time in this court. We think it is apparent
that it cannot be. By the action of the parties and the
board a compliance with the rules was waived. A hearing
was had and a decision rendered without objection on the
ground of a disregard of the rules, and there does not seem
to have been a suggestion on the part of anyone that the
hearing was not regularly and properly held. It is not per-
ceived how defendant in error can now complain.

The Board of Land Commissioners is vested with very
important powers, and in the exercise of those powers much
is wisely and necessarily left to their sound discretion. We
are satisfied that the board has intended as between these
parties to act fairly in maintaining the law upon the subject
as they understood it. The error in their decision resulted
from what we are led to regard as too technical and literal
a construction of certain language employed in the statute.

We conclude that the plaintiff in error is entitled to a
renewal of his lease. The judgment of the District Court
must, therefore, be reversed; and that court will be directed
to vacate its judgment and enter an order reversing the de-
termination of the board, and ordering the granting and
execution of a lease to plaintiff in error in renewal of his
former lease, in accordance with the requirements of Sec-
tion 815 of the Revised Statutes.

We understand that another case is pending in this court
involving the question whether in case of renewal under

Section 815 the board may increase the valuation of the land, for the purpose of fixing the rental upon the renewal, basing such increase upon the natural and unimproved condition of the land only, or whether the renewal in all cases is required to be allowed at the original rental. That question, therefore, is not considered or decided in this case.

*Reversed.*

Corn, J., and Knight, J., concur.