SULLIVAN CO. ET AL. v. MEER

(No. 2215; April 28, 1942; 125 Pac. (2d) 168)

92

For the appellant, there was a brief and an oral argument by *S. K. Briggs* of Rawlins.

As amicus curiae, there was a brief by *Ewing T. Kerr,* Attorney General; *H. I. Bacheller,* Deputy Attor-

ney General; and *Arthur Kline*, Assistant Attorney General, all of Cheyenne, and an oral argument by *Mr. Bacheller*.

For the respondent Sullivan Company, there was a brief and oral argument by *C. A. Brimmer* of Rawlins.

96

For the respondent, Susan J. Quealy, there was a brief and oral argument by *Patrick J. Quealy, Jr.*

*S. K. Briggs* in reply.

BLUME, Justice.

Mark Meer and his son Robert Meer were, at the times in controversy herein, engaged in the sheep business under the name of Mark Meer & Son. Both own land adjacent to the land involved herein. In 1935 Robert Meer asked that certain lands, theretofore part of the Federal Domain, namely Section 31, T. 27, R. 80, the E/and the N/2 NW/4, Sec. 6 and SE/4 SW/4, Sec.

6 (440 acres), and all of Sec. 7, except the W/2 NW/4 (Sec. 7) (560 acres), T. 26, R. 80; the N/2 Sec. 2, the S/2 Sec. 12; the W/2 NW/4 Sec. 12 (400 acres), the N/2 SE/4 Sec. 11 (80 acres) T. 26, R. 81, and Sec. 35, T. 27, R. 81, a total of about 3060 acres, all in Carbon County, Wyoming, be exchanged for other lands owned by the State. On March 27, 1940, the exchange was effected and a patent issued to the State therefor. Thereupon Sullivan & Co. applied to lease the E/2 of Sec. 6 and the E/2 of Sec. 7 aforesaid, offering to pay 10 cents per acre as annual rental. Susan J. Quealy applied to lease most of the land, namely, about 2000 acres, offering to pay an annual rental of 15 cents per acre. Robert Meer applied to lease all of the land, offering to pay an annual rental of 5 cents per acre. One Dolling also applied to lease part of the land. That is not in controversy here. The Commissioner of Public Lands decided on July 30, 1940, as follows:

"1. I allow a lease to Robert Meer on Lots 1, 2, 3, 4, S/2 NE/4; SE/4 SW/4; Section 6, Lots 3, 4, E/2; E/2 W/2; Section 7, Township 26 North, Range 80 West, All Section 31, Township 27 North, Range 80 West, Lots 1, 2, 3, 4, S/2 N/2; Section 2, W/2 SE/4; Section 11, W/2, NW/4; S/2; Section 12, Township 26 North, Range 81 West, All Section 35 Township 27 North, Range 81 West, containing 3061.23 acres at a yearly rental of 5¢ per acre.

2. I disallow the application of Sullivan Company for the reason that they do not own or lease lands adjoining those applied for.

3. I disallow the application of William H. Dolling for the reason that he does not own land adjoining that applied for.

4. I disallow the application of Susan J. Quealy for the reason that she does not own land adjoining that applied for and has on file a State exchange application for lands adjoining her deeded lands."

An appeal was taken by Dolling, Mrs. Quealy and Sullivan & Co. to the Board of Land Commissioners.

That board, on October 4, 1940, approved the decision of the Commissioner of Public Lands, except that 480 acres of the land, not in controversy here, was leased to William H. Dolling at an annual rental of 5 cents per acre, and the remaining land of about 2580 acres was leased to Robert Meer at an annual rental of 5 cents per acre. An appeal was taken from that decision to the district court of Carbon County, Wyoming. That court in part affirmed, in part reversed, the decision of the Land Board, leaving the lease granted to Robert Meer undisturbed as to 1780 acres, but directing that a grazing lease be awarded to Sullivan Company for the E/2 of Section 7 and the E/2 E/2 of Section 6, T. 26, R. 80 (480 acres) at an annual rental of ten cents per acre, and that a grazing lease be awarded to Susan J. Quealy to the S/2 S/2, Sec. 12, and N/2 SE/4 of Sec. 11, T. 26, R. 81, and the S/2 SW/4, of Sec. 7, T. 26, R. 80, (320 acres), at an annual rental of 15 cents per acre, and directing the lease of Robert Meer to be modified accordingly.

In previous decisions of this court, the rule has been stated that the Land Board exercises a wide discretion, and that in the absence of fraud or abuse of discretion, its action should be upheld. Miller v. Hurley, 37 Wyo. 344, 262 Pac. 238, and cases cited. If there is an illegal exercise of discretion, however, or if an error of law is committed, the court will review the action of the Board. Miller v. Hurley, supra; Cooper v. McCormick, 10 Wyo. 379, 69 Pac. 301. In Walls v. Evans, 38 Wyo. 103, 265 Pac. 29, the action of the Board was reversed, when it ignored one of its own rules. In Ehle v. Tenny Trading Company, 56 Ariz. 241, 107 P. (2d) 210, the court stated that the action of the Land Board should be accepted "unless unsupported by or contrary to the evidence, or the result of fraud, or misapplication of the law."

As already shown, the Commissioner of Public Lands

rejected the applications of Sullivan Company and Susan J. Quealy for certain reasons stated in the decision. The record of the Land Board does not show the reasons for rejecting these applications, but inasmuch as the action of the commissioner of public lands was approved, we presume that the reasons given by the latter were also approved, and that the applications were rejected upon those grounds. One of the reasons given for the rejection of the application of Susan J. Quealy was that she "has on file a State exchange application for lands adjoining her deeded lands." That, we think, was not a sufficient reason. The record does not indicate that the exchange is very likely to take place, and even if it should take place, there is no certainty, or even probability, so far as the record shows, that she would be a successful applicant of a lease of the land. The testimony shows that Mark Meer has on file another application for the exchange of state lands for land still part of the Federal Domain. If granted, and if it would inure to the benefit of Mark Meer, it would also inure to the benefit of Robert Meer, associated in business with Mark Meer. The status of that application is no more definite than the status of the application of Mrs. Quealy. If the former should have no bearing in the case at bar, neither should the latter.

The Quealy and the Sullivan applications for a lease were further rejected for the reason, as stated, that these applicants had no "land adjoining that applied for." Each of the applicants, however, have land in the vicinity of the land here in question, lands of each of them being distant from the lands sought to be leased only a fourth of a mile. The question, accordingly, arises, whether or not the reason given is sufficient for the rejection of these applications. If not, then the case is not unlike that of Cooper v. McCormick, supra, in which the action of the Land Board was reversed, in connection with the main question in

the case, on account of misconstruction of the law. The sections of our statute having a bearing herein are Sections 91-113, -114. These, so far as applicable here, are as follows:

Section 91-113 provides:

"The board shall lease all state lands in such manner and to such parties as shall inure to the greatest benefit and secure the greatest revenue to the state. Except as herein provided, preference shall in all cases be given to applicants who are bona fide resident citizens of the state and to firms, associations or corporations authorized to transact business in the state, having actual and necessary use for the land and holding title to lands in the vicinity of the land applied for, who offer to pay the highest annual rental for the use of the land for a term of five years," etc.

Section 91-114 is as follows:

"If two or more qualified applicants shall offer the same annual rental for the same lands, and such offers are the highest offers received, and are equal and above the minimum rental fixed by the Board * * * the Board shall grant the lease to the applicant holding title to lands nearest to the lands applied for."

It may be noted that Section 91-113, supra, does not require that an applicant for a lease must own adjoining land. All that is required is that he has lands in the vicinity. Section 91-114, supra, is not applicable in this case, for the reason that the applicants did not offer the same annual rental, Mrs. Quealy offering three times the annual rental, and the Sullivan Company offering twice the rental which was offered by Robert Meer. It would seem, accordingly, that the land commissioner, and the Land Board, acted under a misapprehension of law, within the meaning of Cooper v. McCormick, supra, and that their decisions, accordingly, cannot be upheld, on the grounds stated.

The trial of the case was not confined to the question

above discussed. A good deal of testimony was introduced to show the relative equities of the several parties herein, perhaps on the theory, as stated in Bucknum v. Johnson, 21 Wyo. 26, 127 Pac. 904, that the Land Board "might be presumed to have passed" on that point. The trial before the court is one de novo. Section 91-306, Rev. St. 1931. And while that does not mean that "the discretion of the land board is wiped out by appeal, and the discretion of the trial judge substituted in its place" (Miller v. Hurley, supra), still we are unable to see how the judgment of the trial court, which is ordinarily presumed to be correct, can be entirely ignored in connection with those facts which were made to appear, or completely appear, only in the trial of the case in the lower court, especially in view of the fact that the land commissioner, and the land board, appear to have rested their decision on specific grounds, as in the case at bar. That seems to be recognized in Ehle v. Tenny Trading Company, supra, when the court stated that the decision of the land board might be rejected if unsupported by or contrary to the evidence.

One of the main questions in this connection is as to whether or not the use of the land in controversy is necessary to the respective parties herein. The proceedings before the commissioner of public lands, and before the land board, shed little light on the question. The trial court evidently found that the use of the land awarded to the respective parties was necessary to them, and we have carefully examined the testimony adduced in that connection to see whether or not we are justified in reversing the district court in its finding on this point. The land involved herein is dry land, and good only for grazing purposes. A great deal of the land surrounding the private holdings of the parties hereto is still a part of the open Federal Domain, and is, as has been customary in this state from its

beginning, used by the men owning live stock. The value of the land, per acre, is ordinarily comparatively small, and the livestock men have acquired private holdings mainly for the purpose of thereby controlling, in a measure, the use of the lands still belonging to the Federal Government. Of late years, the use of that class of lands has been regulated by a system of permits under the so-called Taylor Grazing Act. Some testimony was introduced to show that the respective parties have permits under this Act. Counsel for appellant argues that under this Act, small operators are under a disadvantage, implying that the Meers are small operators, which is not true, according to the testimony of Mr. Sullivan, nor is there any evidence of discrimination. In any event, it would seem that if such discrimination has been made, redress should be sought at the hands of the authorities administering the Taylor Grazing Act, although we need not say that, if such discrimination in fact exists, the Land Board should not take that fact into consideration in order to equalize opportunities. The point does not seem to be involved in this case in the face of the record before us.

Mark Meer and his son, according to the testimony, own about 9,280 acres of land, about 1160 acres thereof being owned by Robert Meer personally. They have in addition to that been generously treated in the acquisition of leases of school and state lands. They have about 2400 head of sheep. Their "home ranch" is located a number of miles northwesterly from the land involved herein, and they use that territory for summer grazing. Robert Meer acquired a homestead, located part in Section 1, T. 26, R. 81, and part in Section 6, T. 26, R. 80, adjoining on the east, and adjacent to part of the land in controversy herein. Mark Meer owns some land south of this homestead, which is also adjacent to part of the land involved herein. A lake, a well, some lambing sheds and a small house are

located on these lands, and they were acquired mainly for the purpose of using them and the surrounding territory to graze sheep thereon during the winter. The Meers, however, did not use these lands for any purpose until 1932. Mark Meer testified that they had but a small amount of hay, and that without the land involved herein, "it would be hard to winter our sheep. We have lots of summer range but we are short of winter range."

The testimony shows that Sullivan Company and the Quealy interest used the land involved herein for many years, extending over a period of 20 to 40 years. Sullivan Company own the E/ SE/4 Section 8, T. 26, R. 80, located just a fourth of a mile from the east boundary of the lands involved herein. A reservoir is located thereon. That is used for the purpose of watering sheep. Sullivan Company has about 4000 to 4500 head of sheep, 50 head of cattle and 50 horses. It owns 5240 acres of land in the neighborhood, and other lands in adjoining townships. It has also been treated generously in connection with leases of school lands. It appears from the testimony of Mr. Sullivan, that the company has had, in the past, more or less trouble with the Meers. Asked as to the effect of a lease to all of the land to Robert Meer, he stated: "Well, it makes it very hard to get a bunch of sheep in there and water them and stay at that lake without trespassing. * * * It would probably keep me in controversy all the time with this reservoir." Asked why he had offered to pay ten cents per acre as annual rent he stated that "I figured I needed some protection on this land to keep from trespassing. My herders have been ordered off of there before."

Mrs. Quealy owns 4880 acres of deeded land in the neighborhood of the land involved herein, has 45 horses, 150 cattle and 5000 sheep. Among the lands

owned by her is the S/2 N/2 and the S/2 of Section 13, T. 26, R. 81, and some land immediately adjoining on the east. Hay is raised on this land, and is but one-fourth mile south of some of the land awarded to her by the court. There is a fence, it seems, owned by her, and erected by her predecessor in interest, running east and west in the middle (north and south) of the S/2 SW/4, Section 7, T. 26, R. 80, and the S/2 S/2 of Section 12, T. 26, R. 80 (awarded to her for leasing purposes), and it is claimed that the land awarded to her by the court is an integral part of her holdings, and convenient for use, in view of the hay on the land above mentioned. It is argued by counsel for Robert Meer, that there is no direct testimony on behalf of Sullivan Company and Mrs. Quealy, that the use of the land awarded to them is necessary to them. That is only partially true, as shown herein. Furthermore, counsel for the respondents argue that the long use thereof by the parties tends to show that the use is necessary, and we are inclined to think that that is true. We do not presume that the statute contemplates "absolute" necessity. Not even the testimony on behalf of the Meers shows that. Taking all the testimony into consideration, we hesitate to hold that the district court was wrong in its holding on this point.

Section 91-113, Rev. St. 1931, above quoted, provides that the party (when no renewal-lease is involved) to whom the use of the land is necessary, and who bids the highest rental for the land, shall have a preferential right to lease it. If this provision stood alone, and Mrs. Quealy had a necessary use for the land, and no other legal objection existed, then, it is clear, a lease for all of the land for which she applied, which was for about 2000 acres of the land, should have been awarded to her, since she offered to pay 15 cents per acre as an annual rental. The trial court did not make an order to that effect, evidently on the theory that the Land

Board order should not be interfered with, except in so far as proper to protect the interests of the others, and the award to Sullivan Company was made, probably, partially on the theory that as to that land its equity was greater than that of Mrs. Quealy on the ground that it should be able to use its water on the land above mentioned without trespassing on the lands of the others. Nor does Mrs. Quealy nor Sullivan Company complain of the action of the trial court.

The Attorney General, appearing herein as amicus curiae, seems to argue that in view of the fact that the Land Board must cause the lands to be appraised for the purpose of fixing the rental value (Sec. 91-107, -108), and did so in this case, the fact that more than the reasonable value fixed by the board is offered should have no influence in determining as to whom a lease shall be awarded. That, apparently, was also the thought of the commissioner of public lands and the Land Board. If that were correct the work of the courts in land-lease cases would be very greatly simplified. But that construction does not seem to be in harmony with the provision of the statute just stated, nor with the first sentence of Sec. 91-113, supra. It is not the function of this court to determine the policy of the state in that connection. But if the position apparently taken by the attorney general and the Land Board is what should be in accordance with the proper policy, then Section 91-113 should be revised. As the section stands now, we are unable to see how we can read out the provision that an offer of the highest rental must be taken into consideration by the Board. True, the amount of rental is not the sole factor to be considered. We stated in Kerrigan v. Miller, 53 Wyo. 441, 84 P. (2d) 724, that the "legislature has made the greatest benefit a factor distinct from that of the greatest revenue." It is, of course, hard, as pointed out in the case just mentioned, to determine what is

of the greatest benefit, as distinct from the greatest revenue. Necessity for use is one factor, limitation of amount of land leased is another. Probably peace among live-stock men, and prevention of possibly oppressive conduct, may be other factors. The Attorney General seemingly would have us lay down the rule that if there is no fraud, and if no manifest injustice to the parties concerned affirmatively appears, then the action of the Land Board should be upheld. But that seems to leave out of consideration that there must be justice, too, to the State, and wrongly or rightly, the legislature appears to have made the greatest revenue one of the factors to be taken into consideration, which seems not to have been done in this case. We have a case here where Sullivan Company and the Quealy interests used the lands here involved, many years prior to the use thereof by the Meers. Legally speaking that would make no difference. Morally speaking, it cannot be held to be an injustice to the Meers, when the former continue to use a portion thereof. The Meers seem to have fared farily well when it was jointly used by all three parties up to the time when the lease was awarded to Robert Meer. Sudden injustice to a complaining party could scarcely arise when, if anything, his condition has been bettered. Taking all facts and circumstances into consideration in this case, we cannot, in view of the differential in the offers of rental, hold that the trial court erred in partially reversing the decision of the Land Board.

The Attorney General objects that the trial court undertook to award leases to the Sullivan Company and to Mrs. Quealy, when, under the constitution and the statutes of this state, the power to lease is vested in the commissioner of public lands and the Land Board. The extent of the objection is not clear, and we shall confine our discussion to the specific point apparently raised by him. The form of the judgment herein, prob-

ably drafted by counsel, is subject to objections. It may be understood as awarding certain lands to Susan J. Quealy and the Sullivan Company. It proceeds to direct Robert Meer to return his lease to the Board "so that the same may be modified and changed and the lands awarded to Sullivan Company and Susan J. Quealy be eliminated therefrom." It does not direct the Board to award a lease to Susan J. Quealy and Sullivan Company, as was done in Cooper v. McCormick, supra, and that is as far, we think, as the court could go. It has no power, as properly contended by the Attorney General, to lease state lands. That power is by the constitution and the statutes vested in the commissioner of public lands, and the Land Board. However, we think that the court meant to hold that the Land Board should have accepted the offers of Mrs. Quealy and Sullivan Company as to certain of the lands involved, and should issue leases to them, and the trial court should correct its judgment accordingly.

As so modified, the judgment is affirmed.

*Affirmed.*

RINER, Ch. J., and KIMBALL, J., concur.