PHILLIP S. MAHONEY,

*Appellant*

(Appellant below)

vs.

L. L. SHEEP COMPANY, A CORPORATION,

*Appellee*

(Appellee below)

(No. 2830; December 16, 1958; 333 Pac. (2d) 712)

For the appellant, the cause was submitted upon the brief of Murane and Bostwick of Casper, Wyoming, and oral argument by Edward E. Murane.

For the appellee, the cause was submitted upon the brief and also oral argument of W. J. Wehrli of Casper, Wyoming.

Heard before Blume, C. J., and Harnsberger and Parker, JJ.

## OPINION

Mr. Justice Parker delivered the opinion of the court.

This case relates to conflicting applications for rental of several nonadjoining tracts of State grazing land.[1] The L. L. Sheep Company, hereafter referred to as the company or appellee, had for many years occupied 11,670.11 acres of Taylor grazing land in the immediate area of its stock-raising operations. Prior to 1955 the company had made application for transfer of this Taylor land to State ownership; and when the acreage was transferred, the company applied to the Commissioner of Public Lands to lease it. Other ranchers in the area also applied to lease a portion of it, Phillip S. Mahoney requesting 7,017.44 acres. The commissioner awarded the company a lease for 9,040.71 acres and Mahoney 1,669.40,[2] and both parties appealed. The land board approved the com-

---

[1] Distances between the tracts varied from one-half to three and one-half miles.

[2] Other applicants who were granted varying amounts have not appealed.

missioner's decision, and Mahoney appealed to the district court, which issued judgment affirming the board's decision. Mahoney presents this appeal, urging that the judgment is contrary to the evidence and to the law in that there was a grave abuse and illegal exercise of the board's discretion. His view stems principally from two contentions: (1) that an inexperienced commissioner gave weight to various matters which rightly had no bearing upon the granting of the lease and the board blindly followed the commissioner, thereby gravely abusing its discretion; (2) that the board's decision is a patent violation of § 24-115, W.C.S. 1945, since the statute provides that the board *shall* grant the lease to the applicant holding title to the lands nearest those for which application has been made, whereas the board instead of considering the location of each applicant's land arbitrarily awarded the lease on some other basis.

In arguing the inexperience of the commissioner and pointing out the error which allegedly ensued because of this, appellant lists the reasons which the commissioner gave for granting of the leases:

" 'In awarding these leases, I have been governed primarily by the preceding reports of the inspector[s] and assessor; and also by the following facts and conditions:

" '1. actual need for the land;

" '2. accessibility;

" '3. *the amount of deeded land owned;*

" '4. no applicant has a legal preference right as a former lessee;

" '5. L.L. Sheep Company *made application for transfer* of this land to State ownership;

" '6. L.L. Sheep Company *paid all advertising costs* in the amount of $327.90.'

"(emphasis supplied)"

Appellant begins his discussion of these reasons by merely saying that the commissioner did not follow the recommendation of one of the inspectors who said:

"Both of these parties own and run a great number of livestock. It looks like this tract should be divided in these two ranches."

We doubt if this matter can be brushed aside so casually. The commissioner said it was a primary reason for his decision, and there is nothing to show to the contrary. It was one way of pointing out conflicting equities between the company and Mahoney. The fact that the commissioner's division was not equal or that he did not cut each piece in the middle does not mean that the recommendation was ignored.

Appellant argues the commissioner's numbered reasons at some length, and we will consider them in the order listed, bearing in mind that the commissioner's decision related to other applicants as well as the parties before us.

1. Actual Need for the Land. This admittedly is normally an important consideration but has little actual bearing on the present litigation because the two parties here both need the area under application.

2. Accessibility. This too while important in a consideration of all applicants was not determinative as far as these two were concerned since the land adjoined both.

3. The Amount of Deeded Land Owned. Ownership of land in the area of that to be leased is not a con-

sideration which is legally persuasive per se, but undeniably it does constitute an equity. We have often said that the legislature meant to make it the policy of the State in leasing its land to recognize existing equities of the applicants. See Stauffer v. Johnson, 71 Wyo. 386, 259 P.2d 753, 763; and Kerrigan v. Miller, 53 Wyo. 441, 84 P.2d 724, 729. To list the *amount* of land as a factor here, if an error at all, is not seriously out of line if we interpret his reason as stated in the light of ordinary parlance.

4. No Applicant Has a Legal Preference. The fact that none of the parties had a legal preference admittedly was a proper item for consideration even though it could not be determinative.

5. L. L. Sheep Company Had Made Application for Transfer of This Land to State Ownership. This factor had no bearing on the standing of the company except that it tended to indicate prior use of the sought land by that applicant. It bore upon the question of the standing to be accorded to one who was in a sense seeking a renewal. This then if literally construed was an equity which we would be reluctant to rule out as a consideration available to the commissioner. See Sullivan Co. v. Meer, 58 Wyo. 90, 125 P.2d 168, 173.

6. L. L. Sheep Company Paid All Advertising Costs in the Amount of $327.90. This item should have constituted no basis for award of the lease except as it might possibly connote to the commissioner the company's prior occupancy of the land.

Appellant insists that the board "blindly followed the recommendation of the commissioner" and thereby adopted his reasons. It is true that we indicated in Sullivan Co. v. Meer, supra, the propriety of pre-

suming the board to have adopted the commissioner's reasons where record showed none by the board. However, we doubt if this rule should apply where as in the present case a full hearing was had and a transcribed record of all the proceedings made and available. Even if we should assume that the reasons of the board were those of the commissioner, we think they are not so untenable as to constitute an abuse or illegal exercise of discretion.

Appellant's second basis of challenge to the judgment is that the board in addition to blindly following the commissioner patently violated § 24-115 which reads:

"If two or more qualified applicants shall offer the same annual rental for the same lands, and such offers are the highest offers received and are equal and above the minimum rental fixed by the board, and no preference exists in the old lessee, or if such old lessee does not exercise such preference, the board shall grant the lease to the applicant holding title to lands nearest to the lands applied for.* * *"

He says the granting of the lease to the applicant holding title to the nearest lands is mandatory and insists that since the State lands in the present case adjoined areas occupied by both parties the State lease must be divided equally between the two. Let us examine his thesis.

Although the two parties did not initially offer the same annual rental, the company later agreed to meet any bid, and the figure to each of the parties was ten cents per acre, so that from this aspect the matter *might* fall within the mentioned provision; however, the statute contains no direction to the board with relation to the method of division of State land under

circumstances such as presented here. Thus, the interpretation which appellant urges can be based only on speculation of what the legislature intended. We indicated in State ex rel. Fawcett v. Board of County Com'rs of Albany County, 73 Wyo. 69, 273 P.2d 188, that the intention and meaning of the legislature must be determined from the language of the statute itself and not from conjecture aliunde. See also 82 C.J.S. Statutes § 322. It should be noted in that connection that we are obligated to construe all statutes on this subject in pari materia, Mustanen v. Diamond Coal & Coke Co., 50 Wyo. 462, 62 P.2d 287; and such interpretation should apply as to the date of enactment, State ex rel. R. R. Crow & Co. v. Copenhaver, 64 Wyo. 1, 184 P.2d 594. Ch. 108, S. L. of Wyoming, 1929, the source of § 24-115, contained a section immediately preceding it (as amended now § 24-113, W.C.S.1945) which gave preference to persons holding title to lands "in the vicinity of the land applied for." This provision was deleted from that section by a subsequent amendment and does not now appear in the statutes. However, under the rules of interpretation previously mentioned, it must be considered as having a bearing upon § 24-115. Accordingly, it would seem that the legislature contemplated (1) preference being given to an applicant whose land was in the vicinity and (2) where two or more applicants had land in the vicinity preference being given to the applicant holding title to lands *nearest*. It is doubtful that the legislature had in mind a situation like the present where the holdings of both applicants adjoined the State land. If so, there is no indication in the printed word. We would be hesitant to reverse the board's decision for contravention of a statute, the meaning of which is so vague on the point at issue.

Let us follow in more detail the arguments advanced by the parties.

Appellant contends that the judgment herein should be reversed if we are to be consistent with the case of L. L. Sheep Company v. Potter, 67 Wyo. 348, 224 P.2d 496, because this court paid no attention to the fact that land had previously been used by Potter. We would hesitate to say that such interpretation is warranted. There, as in most land cases, certain equities existed in favor of each applicant, and the agency vested with the authority to grant the lease was obligated to determine which applicant merited the award. The point which we consider to have been controlling in the Potter case was our re-emphasis of the principle enunciated in Howard v. Lindmier, 67 Wyo. 78, 214 P.2d 737, that the board is entitled to exercise sound discretion in the awarding of leases; and even though the court might disagree with the result, this would not permit a reversal unless the board could not reasonably under the state of the record have made the award.

Appellant also urges that the two applicants are on the same footing, that both have extensive ranching businesses,[3] both need acreage, both were qualified to request the lease, and neither had violated any rule or statute. Appellee does not deny this and concedes that it has no legal preference, but contends that the ex-

---

[3] The evidence shows that Mahoney had 10,000 acres deeded land, 10,000 acres leased State, 1,600 acres leased fee, 40,000 Taylor grazing, and ran 2,300 head of cattle, 2,500 head of sheep, 40 head of horses; and that the company had 25,000 acres deeded, 21,000 acres leased State, 8,000 acres leased fee, 65,000 Taylor grazing, and ran 11,200 head of sheep, 200 head of cattle, 50 to 75 head of horses.

isting equities justify the board's decision, pointing out particularly that it has had the right to use the land in question for many years and that appellant now having access to land which he did not have before cannot properly complain.

Appellant maintains that as a matter of practical equity the State land here under consideration will in the future serve as a base for the securing of the Taylor land bordering it;[4] thus appellee's State lease of any land adjoining appellant's Taylor land is a future threat against him. He suggests that to prevent any such unhappy contingency both parties should have been granted a corridor of State land bordering their respective holdings. Perhaps his formula is best epitomized in one reference to a division of several sections wherein he states, "For the protection of both applicants, this award should have been split down the middle." This method if applicable to all of the land under consideration, as it must be if his philosophy is borne out, presents serious problems. A map showing the location of all of the lands in the area indicates that a division such as suggested by appellant is physically impossible in instances where the State land corners on both applicants and also where a tract is asymmetric. Additionally, it would seem to be impractical where the strips are as narrow as one-fourth mile if a fence should be required "down the middle." In the instant case the smallest tract is four hundred acres, but approval of such a formula would necessarily require its application to tracts even as small as forty acres, which would seem to create serious difficulties. We are doubtful that the proposed solution would be practical and in conformity with the inten-

---

[4] C. 243, 68 Stat. 151, 43 U.S.C.A. §§ 315, 315m (Supp. 1957).

tion of the legislature. Appellant's fear of this potential encroachment by way of the administering of the Taylor Grazing Act would seem to be remote. We must assume that the Federal authorities in charge would act fairly, giving due weight to all existing equities, and we cannot presuppose that their decisions would be unreasonable so as to deny renewal of leases which had properly been granted him. See generally the views of this court as expressed in Sullivan Co. v. Meer, supra at 125 P.2d 172; and Gies v. Boehm, Wyo., 329 P.2d 807, 819.

It is our view that a stereotyped solution such as has been suggested is not only impractical and contrary to the intent of the legislature but impinges upon the authority of the land board as prescribed by the constitution.[5] We cannot agree that the board in applying a statutory provision as unspecific as the one under consideration is required to divide the available State land in complete parity between adjoining owners.

The constitution which creates the board of land commissioners grants broad authority which is to be exercised "under direction of the legislature as limited by this constitution." Under this provision, the legislature is authorized to establish rules and methods which will govern the board within constitutional limits, but any statutes passed under this authority must if effective to control a controverted point be clear and definite. When there is no such direction the board must exercise its best judgment with which the courts may not interfere except in cases of illegal

---

[5] Art. 18, § 3, Constitution of Wyoming.

exercise of discretion, or fraud.[6] There is no claim of fraud in this case, and we find no illegal exercise or abuse of discretion.

Affirmed.

---

[6] Banzhaf v. Swan Co., 60 Wyo. 201, 148 P.2d 225; Mayor v. Board of Land Com'rs, 64 Wyo. 409, 192 P.2d 403, 195 P.2d 752; Hoy v. Frederick, 70 Wyo. 496, 252 P.2d 112; Stauffer v. Johnson, 71 Wyo. 386, 259 P.2d 753; and Frolander v. Ilsley, 72 Wyo. 342, 264 P.2d 790.