**Janet REDING, Special Administratrix of Estate of Kenneth John Hall, Deceased, Plaintiff,**

v.

**TEXACO, INC., Appellant,**

v.

**MORAN BROS., INC., Appellee.**

No. 75–3805.

United States Court of Appeals,
Ninth Circuit.

June 8, 1979.

2. *See* note 1 *supra*.

514

Francis Breidenbach of Cummins, White & Breidenbach, Edwin Oster of Breidenbach, Swainston, Yokaitis & Crispo, Los Angeles, Cal., for appellant.

Robert S. Hamrick of Roper & Folino, Los Angeles, Cal., Ellis J. Horvitz, Encino, Cal., Edward J. Horowitz, Los Angeles, Cal., for appellee.

Before ELY and HUFSTEDLER, Circuit Judges, and MUECKE, District Judge.*

MUECKE, District Judge:

Texaco, Inc. (Texaco), defendant and third party plaintiff below, appeals from a verdict directed in favor of Moran Bros., Inc. (Moran), third party defendant below, in which the trial court ruled, as a matter of law, that Wyoming Statute § 30–28.3 rendered void and unenforceable Texaco's contractual right to indemnification by Moran for the wrongful death of Kenneth John Hall.

Texaco argues that (1) the district court erred in finding that the indemnity agreement is governed by Wyoming law; (2) the "validation of contracts" rule should be invoked to apply the law which would uphold the intent of the parties; (3) the indemnity clauses of the contracts do not purport to require indemnification for the negligence of Texaco and, therefore, are not invalid under Wyoming law; (4) the Wyoming statute is ambiguous in its terms and should be construed to require "concurrent active negligence;" (5) Texaco is entitled to recover damages from Moran for breach of contract even if the indemnity clauses are held invalid; (6) the Wyoming statute is unconstitutional under the laws and constitution of the State of Wyoming; (7) the Wyoming statute is unconstitutional under article I, section 10 of the United States Constitution, as applied to the indemnity agreement; and (8) the Wyoming statute is unconstitutional under the equal protection clause of the fourteenth amendment of the United States Constitution.

Texaco is a Delaware corporation with its headquarters in New York. Moran is a Texas corporation with its headquarters in Texas.

On March 8, 1966, Texaco and Moran entered into a "Standard Drilling Contract" (the "1966 contract"). The 1966 contract purported to set forth the rules governing all future drilling contracts between Texaco and Moran. Under the contract neither party was required to perform any specific acts, nor was either party required to contract with the other in the future. No consideration was tendered or received by either party, nor did the contract provide for any. The contract was to take effect only if the parties elected to do business with each other at a later date.

On April 16, 1973, Texaco and Moran entered into a "Drilling Bid Contract" (the "1973 contract") in the State of Colorado. This contract is conceded by the parties to be a valid, legal document. The 1973 contract was to be performed in Wyoming, where the accident resulting in decedent's death occurred. The 1973 contract incorporated the 1966 contract by reference. The 1966 contract purported to indemnify Texaco for Moran's negligence.[1] The contract did not, on its face, purport to indemnify Texaco for Texaco's own negligence.

In 1969 Wyoming enacted Wyoming Statute § 30–28.3.[2] By its terms the statute

---

* Honorable C. A. Muecke, United States District Judge, District of Arizona, sitting by designation.

1. The indemnity clause of the 1966 contract provides:

    11. INDEMNITY AND INSURANCE
      11.2 Contractor [Moran] covenants and agrees to fully protect, indemnify, and hold harmless TEXACO, its successors and assigns, from and against each and every claim, demand or cause of action, and any liability, cost, expense, damage or loss in connection therewith, (1) which may be made or asserted by Contractor, Contractor's employees, agents or subcontractors, or by third parties, on account of personal injury or death, or on account of property damage, resulting from any and all willful or negligent acts or omissions of Contractor or Contractor's employees or agents or of any subcontractor, or of any such subcontractor's employees or agents, in connection with or incident to the performance of the work hereunder, and (2) which may be based upon the infringement or the contributory infringement of any patent in or in connection with the performance of the work hereunder or the use of materials or equipment furnished for or in connection with said work.

2. Section 30–28.3 provides:
    "Provisions for indemnity in certain contracts—Invalidity.—All agreements and all covenants or promises contained in, collateral to, or affecting any agreement pertaining to any well for oil, gas, or water, or mine for any mineral and which purport to indemnify

"applies to *any* agreement or covenant which seeks to indemnify the indemnitee (Texaco) against liability for death or injury arising from the *sole or concurrent* negligence of the indemnitee, *or* from any operation carried on at the *direction* of, under the *supervision* of, or in accordance with [the] methods and means *specified* by the indemnitee." *Mountain Fuel Supply Co. v. Emerson*, 578 P.2d 1351, 1357 (Wyo.1978) (Emphasis in original.). The statute was enacted after the 1966 contract was executed but before execution of the 1973 contract.

The procedural history of the case is somewhat confusing and is set out here for the sake of clarity.

Plaintiff brought the suit against Texaco alleging eight causes of action. The fourth cause of action alleged that Texaco was liable for Moran's negligence. The other causes of action alleged that Texaco was independently negligent.

Texaco filed a third party claim against Moran alleging that the contract between the parties obligated Moran to indemnify Texaco against loss to Plaintiff.

The case went to trial on October 29, 1975. On November 12, 1975, before all the evidence had been taken, Moran moved for a directed verdict pursuant to Rule 50(a), Federal Rules of Civil Procedure. The motion alleged that the evidence showed that "Texaco had supervision and control over the job site and by virtue of the contract retained the right to supervise and control the job site . . ." and that ". . . the other provisions of the statute as relate to the agreement make the indemnity provision in the contract void and unenforceable." The court granted Moran's motion, ruling that Moran was entitled to the directed verdict as a matter of law. The court made no findings of fact with respect to the directed verdict.

The case proceeded, with Moran no longer a party. On November 13, 1975, Texaco and Plaintiff reached a settlement. The parties notified the court of the proposed settlement and asked that a consent judgment be entered. Upon the court's refusal to enter a consent judgment, the parties entered into a discussion with the court, out of which it was determined that: Plaintiff would withdraw all claims except the fourth cause of action; the parties would waive jury trial; the parties would stipulate to damages of $400,000.00; and the court would enter a stipulated judgment on the fourth cause of action, finding Texaco liable in the amount agreed upon. Based on this agreement the court found Moran, who was no longer a party, guilty of negligence and imputed Moran's negligence to Texaco, and entered judgment for Plaintiff.

On November 17, 1975, the Judgment on Directed Verdict was filed with the clerk of the court. Texaco thereafter appealed the Judgment on Directed Verdict.

Turning to the assignments of error, Texaco's first claim is that the trial court erred in choosing to apply Wyoming law to the issue of whether the indemnification agreement is valid. The parties agree that the choice of law rule of the forum, California, is the correct choice of law rule to apply, in accordance with *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941).

---

the indemnitee against loss or liability for damages for

"(a) Death or bodily injury to persons, or

"(b) Injury to property, or

"(c) Any other loss, damage, or expense arising under either (a) or (b) from

"(i) The sole or concurrent negligence of the indemnitee or the agents or employees of the indemnitee or any independent contractor who is directly responsible to such indemnitee; or

"(ii) From any accident which occurs in operations carried on at the direction or under the supervision of the indemnitee or an employee or representative of the indemnitee or in accordance with methods and means specified by the indemnitee or employees or representatives of the indemnitee are against public policy and are void and unenforceable. This provision shall not affect the validity of any insurance contract or any benefit conferred by the Workmen's Compensation Law of this state."

NOTE: It is noted that this section was amended in 1977 and can now be found at § 30–1–131, W.S.1977. The amended statute has no affect on this case.

California uses "governmental interest" analysis as its choice of law rule. *Hurtado v. Superior Ct.*, 11 Cal.3d 574, 579–80, 114 Cal.Rptr. 106, 109, 522 P.2d 666, 669 (Cal. 1974); *Kasel v. Remington Arms Co.*, 24 Cal.App.3d 711, 730, 101 Cal.Rptr. 314, 327 (Cal.App.1972). This approach does not rely on a "mere mechanical balancing of the contacts," but gives "special attention to the actual interests of the concerned states in the resolution of the particular issue presented to the court." *Kasel, supra,* 24 Cal.App.3d at 730, 101 Cal.Rptr. at 327. The California Supreme Court has held that "[i]n a complex situation involving multistate contracts . . . no single state alone can be deemed to create exclusively governing rights. [Citations.] The forum must search to find the proper law to apply based upon the interests of the litigants and the involved states." *Reich v. Purcell*, 67 Cal.2d 551, 553, 63 Cal.Rptr. 31, 33, 432 P.2d 727, 729 (Cal.1967); *Kasel, supra,* 24 Cal. App. at 731, 101 Cal.Rptr. at 327.

Appellant argues that the trial court should have applied either Colorado or California law to the indemnity issue. However, we feel the strength of Wyoming's interest in regulating hazardous activities within its borders compared to the relatively weak California and Colorado interests in the issue justifies the trial court's action in applying Wyoming law.

The Wyoming statute is founded on a strong state public policy. "[T]he minerals industry is the single most dominant economic factor in the state [of Wyoming]." *Mountain Fuel Supply Co. v. Emerson*, 578 P.2d at 1355. The drilling of oil and gas wells is known to be a particularly hazardous type of work and mining workers make up 11.5% of the state's work force. *Id.* The statute evidences a public policy to promote and preserve safe working conditions for persons employed in the state's mineral resource industries. The Wyoming Supreme Court noted that "[t]he statute would thwart attempts to avoid the conse-

quences of liability and thereby insure a continuing motivation for persons responsible for [mining and drilling] activities to take accident prevention measures and provide safe working conditions." *Id.* at 1356. Furthermore, providing safe working conditions for workers in the mining industry also protects the state's economic interest in the industry.

The interests of Colorado and California are not as strong as those of Wyoming. Colorado appears to be the place the contract was made, and Texaco does business there. There is no evidence that Moran does business in Colorado, and in fact, Moran signed the contract in Texas and was not present in Colorado when Texaco signed to finalize the agreement. Texaco relies primarily on *Washington Capitols Basketball Club, Inc. v. Barry*, 419 F.2d 472 (9th Cir. 1969), to support its argument that Colorado law should be applied. In that case Barry had signed a contract to play basketball for the Oakland (Calif.) Oaks of the American Basketball Association. The contract was to run for three years commencing October 2, 1968. Pursuant to the contract, Barry played for the Oakland club during the 1968 1969 season. On August 28, 1969, Oakland assigned Barry's contract to the Washington (D.C.) Capitols basketball club. The next day, Barry signed a contract to play basketball for the San Francisco Warriors, of the National Basketball Association, for the five year period commencing October 2, 1969, and announced his intention to play for the Warriors during the 1969–1970 season. The Washington ball club sued to enjoin Barry from playing for the Warriors during the remaining period of his contract with Washington. *Barry, supra,* 419 F.2d at 476. The suit on the Oakland-Washington contract was brought in California against Barry and the San Francisco Warriors, among others. Thus, in *Barry,* the contract was made in California, the primary place of business of the parties[3] was in California, the forum was in California, and Barry,

---

**3.** The Washington Capitols' predecessor in interest in the Barry contract was the Oakland Oaks ball club, whose primary place of business was in California. *Barry, supra,* 419 F.2d at 474- 476.

apparently, was a California resident. The court applied California law to the contract issue. *Id.* at 477. The *Barry* case is thus distinguishable on its facts from the case now before us wherein none of the parties resided in Colorado, although Texaco did business there, and the contract was to be performed elsewhere. In addition, the statement of the court relied upon by Texaco[4] is a conclusion of law applicable to the *Barry* case, is based on the facts of that case, and is not a conflict of laws rule to be applied mechanically to contract actions in which a conflict of laws problem arises. Wyoming's interest in the indemnity issue outweighs Colorado's interest.

California's interest in this case is solely that of a forum state. Absent any stronger interest, the law of California would apply. However, on the facts of this case, as in *Reich, supra*, the interest of the forum state is overcome by the interest of another state, Wyoming, in regulating conduct within its own borders. 67 Cal.2d at 554–57, 63 Cal. Rptr. at 34–35, 432 P.2d at 730–31. Thus, application of the California choice of law rule dictates that Wyoming law be applied to the indemnity issue.

Appellant further challenges the trial court's decision to apply Wyoming law, however, asserting that the trial court should have invoked the "validation of contracts" rule to apply that law which would have upheld the intent of the parties. Texaco cites *Bernkrant v. Fowler*, 55 Cal.2d 588, 594–95, 12 Cal.Rptr. 266, 269–70, 360 P.2d 906, 909–10 (Cal.1961), in support of its position. *Bernkrant* and its progeny, simply stated, stand for the proposition that the laws of a forum state (California) should not be construed to defeat a *purely local transaction* entered into in another state. *Id.*[5]

■ Appellant also argues that since the 1966 "contract" was to govern work that might be performed in any of several western states, the parties could not anticipate the laws of those states. This argument is devoid of merit. First, the 1966 contract was no contract at all until it was incorporated into the 1973 contract. There was no consideration given and no rights established by the contract. It was merely an agreement that could become part of a contract in the future, and then only if the parties agreed that it should. Thus, the 1966 contract, until 1973, was illusory and unenforceable.

Second, the parties knew in 1966 the states in which they might be doing business (Brief of Appellant Texaco, Inc., at 17) and knew, before the 1973 contract was signed, that they would be doing business in Wyoming. Appellant will not be heard to say that it could not have anticipated the Wyoming statute since it was in effect at the time the 1973 contract, the only enforceable contract, was executed.

Finally, the conflict of laws between California and Wyoming is, in reality, a "false" conflict not unlike those in *Hurtado v. Superior Court*, 11 Cal.3d 574, 114 Cal.Rptr. 106, 522 P.2d 666 (Cal.1974), and *Reich v. Purcell*, 67 Cal.2d 551, 63 Cal.Rptr. 31, 432 P.2d 727 (Cal.1967). Because California has no real interest in the issue, Wyoming law should be applied under California's conflict of laws rules. *Hurtado, supra; Reich, supra.*

Having decided that the trial court was correct in applying Wyoming law to the indemnity issue, we must now decide whether it did so correctly. The Reporter's Transcript of the proceedings below (RT) indicates that the trial court applied section 30–28.3(a) without consideration of the qualifying language set forth in parts (i) and (ii) of the statute. RT 706–08.

■ We now have the benefit of the Wyoming Supreme Court's interpretation of

---

4. "The legality of the Oakland contract which is under attack by the Warriors must be determined by the substantive law of California, the place of making of the contract. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Hutchinson v. Hutchinson*, 48 Cal.App.2d 12, 119 P.2d 214, 217 (1941)." *Barry, supra*, 419 F.2d at 477.

5. Appellant misquoted *Bernkrant* in its brief, at pp. 16–17, perhaps causing its misconstruction of the case.

the statute and must conclude that the trial court applied the law incorrectly. The Wyoming Supreme Court has held that the "clear language of the statute voids and makes unenforceable any agreement to the extent that it seeks to indemnify an indemnitee for his own negligence—regardless of the character of the negligence sought to be protected." (Footnote omitted.) *Mountain Fuel Supply Co. v. Emerson*, 578 P.2d 1351, 1357 (Wyo.1978). Texaco urges us to interpret the statute to require "concurrent active negligence" on its part in order to preclude indemnity. The Wyoming court was explicit on this point. It held that the character of the indemnitee's negligence was of no moment. *Id.* The final authority on the construction of Wyoming statutes is the Wyoming Supreme Court. *See R. R. Comm. of Texas v. Pullman*, 312 U.S. 496, 499–500, 61 S.Ct. 643, 645, 85 L.Ed. 971 (1941). Therefore, a finding of negligence, however slight, on the part of the indemnitee, is sufficient to render the indemnity agreement void and unenforceable under Wyo.Stat. § 30–28.3. ·

Texaco also argues that since the indemnity clauses do not purport to indemnify Texaco for its own negligence, the Wyoming statute should not apply to the indemnification clauses. Simply stated, Texaco would have us believe that so long as an indemnity clause did not expressly purport to indemnify the indemnitee for its own negligence, the indemnitee could be negligent and still be entitled to indemnification for its own negligence. The Wyoming court held that if an express indemnity provision is against public policy, so, too, is an implied indemnity provision. *Emerson, supra*, 578 P.2d at 1358. The indemnity clause at issue here provides Moran shall indemnify Texaco from ". . . any liability . . . (1) which may be made or asserted by . . . [Moran's] employees [Plaintiff decedent] . . . on account of personal injury or death . . . resulting from any and all willful or negligent

acts or omissions of [Moran] or [Moran's] employees . . . in connection with or incident to the performance of the work" under the contract.[6] This clause impliedly would indemnify Texaco where Texaco was concurrently or contributorily negligent, and the indemnification agreement is therefore void and unenforceable to the extent that it would permit Texaco to recover for its own negligence, however slight. See *Emerson, supra*, 578 P.2d at 1358.

Texaco also argues that Wyo.Stat. § 30–28.3 is unconstitutional under the Wyoming Constitution and under the equal protection and contract clauses of the United States Constitution. We reject these arguments for the reasons stated below.

■ First, the Wyoming Supreme Court has passed on the statute's validity under the Wyoming Constitution and held it to be constitutional. *Emerson, supra*, 578 P.2d at 1354–56. We are bound by the Wyoming court's construction and application of the Wyoming Constitution to Wyoming law. *Pullman, supra*, 312 U.S. at 499–500, 61 S.Ct. at 645, 85 L.Ed. 971 (1941); *Erie v. Thompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1936).

■ Second, the statute is not unconstitutional under the contracts clause (art. I, § 10, cl. 1) of the United States Constitution.[7] The Supreme Court of the United States has stated that "the laws which subsist at the time and place of the making of a contract, and where it is to be performed, enter into and form a part of it . . . ." *Home Building and Loan Ass'n v. Blaisdell*, 290 U.S. 398, 429–30, 54 S.Ct. 231, 237, 78 L.Ed. 413 (1934); *Von Hoffman v. City of Quincy*, 4 Wall. 535, 550, 18 L.Ed. 403 (1866). Thus, a contract cannot be impaired, within the meaning of article I, § 10 of the Constitution, by a statute enacted prior to the making of the contract. *See, Hoffman, supra*, 4 Wall. at 550–55, 18 L.Ed. at 408–10.

As discussed above, the 1966 contract between Texaco and Moran was purely execu-

---

**6.** Full text of indemnity clause set forth in Note 1, *supra.*

**7.** "No State shall . . . pass any . . . law impairing the Obligation of Contracts . . . ." United States Constitution, art. I, § 10, cl. 1.

tory. No consideration changed hands and neither party was bound by the agreement absent execution of a Drilling Bid Contract in the future. It is hornbook law that these circumstances do not give rise to a legally binding contract. The 1973 Drilling Bid Contract did provide for consideration, rights and duties of the parties, and incorporated the 1966 contract by reference. Texaco cites no authority for the proposition that the 1973 contract relates back to the 1966 contract and we know of no such authority.

■ Wyoming Statute § 30–28.3 was enacted in 1969, four years before the contract in dispute took legal effect. Because the statute was in effect when the only legally cognizable contract was made, its provisions were incorporated therein under the reasoning of *Blaisdell, supra,* and *Von Hoffman, supra,* quoted above. The Wyoming statute is not unconstitutional under the contracts clause of the Constitution.

■ Third, the Wyoming statute is not unconstitutional under the equal protection clause of the fourteenth amendment as urged by Appellant. The Wyoming Supreme Court also addressed this issue in *Emerson, supra,* 578 P.2d at 1354–56. We agree with their decision and refer the parties to it and the cases cited therein.

■ Having concluded that the Wyoming statute is the proper law to apply, and that indemnity will be precluded only to the extent Texaco seeks indemnification for its own negligence, we must determine if the evidence adduced at trial was such that the trial court could conclude as a matter of law that Texaco was guilty of negligence. *Rutledge v. Electric Hose & Rubber Co.,* 511 F.2d 668, 676–77 (9th Cir. 1975).

We conclude that the Wyoming statute permits negligence to be shown in either of two ways. First, with respect to the clause designated "(i)" in § 30–28.3, as discussed above, it is sufficient if negligence of any character is shown on the part of the indemnitee. *Emerson, supra,* 578 P.2d at 1357.

Second, under subsection (ii), negligence may be attributed to the indemnitee if the accident occurred "in operations carried on at the direction . . . under the supervision . . . or in accordance with methods and means specified by the indemnitee or employees or representatives of the indemnitee . . . ." Wyo.Stat. § 30–28.3(ii). While the Wyoming Supreme Court did not specifically address this portion of the statute in *Emerson,* the facts of that case do not indicate that it was faced with the issue and, hence, did not decide it. *Emerson, supra,* 578 P.2d 1351 (Wyo.1978). The language of the statute supports our conclusion.

As noted in *Emerson,* the preamble to the act identified the act as follows: "AN ACT invalidating, as against public policy, provisions for indemnity in certain contracts where there is negligence *attributable to the indemnitee* . . . ." (Emphasis supplied.) 578 P.2d at 1357. It is noteworthy that the preamble did not refer to negligence *of* or *by* the indemnitee. The clear meaning of the language is that there may be some instances in which the indemnitee is presumed to be negligent, i. e., that negligence will be attributed to it.

■ In addition, one of the principles of statutory construction followed by Wyoming is that "[i]t is contrary to reason to ascribe to a statute a meaning that will nullify its operation, if capable of any other interpretation." *DeHerrera v. Herrera,* 565 P.2d 479, 482 (Wyo.1977). Wyoming also follows the rule that "the intention and meaning of the legislature must be determined from the language of the statute itself" and that "such interpretation should apply as to the date of enactment." *Mahoney v. L. L. Sheep Co.,* 79 Wyo. 293, 302, 333 P.2d 712, 715 (1958). Applying these rules we reach the conclusion that where the indemnitee is purportedly indemnified, expressly or implicitly, for accidents occurring in operations carried on at the direction of, under the supervision of, or in accordance with the methods and means specified by the indemnitee or employees or representatives of the indemnitee, and all other conditions of the Wyoming Statute have been met, negligence of the indemnitor will be imputed to the indemnitee and the indemnity agreement will be rendered void and

unenforceable. As with negligence, the question of the indemnitee's status with respect to supervision or control of the operations is a question of fact.

In passing on the evidence on a Rule 50(a), Federal Rules of Civil Practice, motion, the District Court must consider all of the evidence in the light most favorable to the non-moving party, and must give the non-moving party the benefit of all reasonable evidentiary inferences. *Porterfield v. Burlington Northern Inc.*, 534 F.2d 142, 144 (9th Cir. 1976); *Rutledge, supra*, 511 F.2d at 676–77. We have reviewed the Reporter's Transcript and cannot say, as a matter of law, that Texaco was negligent. There was evidence that Texaco had no authority over the operation of the boiler, that Texaco, and its supervisor on the site, Johnson, was not aware of the specific problems Moran was having with the boiler, and that Johnson had no control over maintenance at the drilling site. The question of Texaco's negligence was sufficient to go to the jury.

Furthermore, we cannot say as a matter of law, that the operations giving rise to Hall's death were carried on at the direction of, under the supervision of, or in accordance with the methods and means specified by the indemnitee or its employees or representatives. As with the negligence issue, the testimony of the Texaco supervisor, Johnson, was sufficient to put this question in issue, and it also was a question for the jury. Thus, the trial court erred in granting Moran's motion for a directed verdict.

Having decided that the indemnity clause may be rendered void and unenforceable by Wyo.Stat. § 30–28.3, we turn to Texaco's final argument. Texaco argues that even if the indemnity clause is found invalid under the circumstances of this case, Texaco will still be entitled damages from Moran for breach of contract. We cannot agree. If Texaco's argument were valid, it would render the Wyoming statute a nullity. The Wyoming Supreme Court has passed on the statute and has stated that the indemnitee may not be indemnified for his own negligence, no matter what the character of that negligence. *Emerson, supra*, 578 P.2d at 1357. We think it enough that if Texaco is found negligent in any way, contributorily or otherwise, Texaco may not recover. Texaco's argument is little more than bootstrapping.

Accordingly, we affirm in part, reverse in part, and remand for further proceedings not inconsistent with this opinion.