Gerald S. MAYKUTH, d/b/a Bighorn Beverage, Plaintiff-Appellant,

v.

ADOLPH COORS COMPANY, a Colorado corporation, Defendant-Appellee.

No. 84–3886.

United States Court of Appeals, Ninth Circuit.

Submitted May 29, 1986.*

Decided June 19, 1987.

---

* The panel finds this case appropriate for submission without oral argument pursuant to Ninth Circuit Rule 3(f) and Fed.R.App.P. 34(a).

W. William Leaphart, Helena, Mont., for plaintiff-appellant.

Leo Bradley, Golden, Colo., for defendant-appellee.

Before HUG, SKOPIL and FLETCHER, Circuit Judges.

HUG, Circuit Judge:

Gerald Maykuth operated Bighorn Beverage, a wholesale beer distributorship, pursuant to a contract with Adolph Coors Company ("Coors"). When Coors terminated Maykuth as a distributor, he brought suit, claiming the termination breached their contract and violated Montana statutes regulating the distribution of beer. Maykuth also alleged violations of the Sherman Act, 15 U.S.C. § 1 (1982).

We affirmed the district court's determination that Maykuth failed to establish Coors's liability under the antitrust laws. We reversed the district court's conclusion that Maykuth was liable to Coors for breach of contract. We also reversed the district court by holding that Coors did breach Maykuth's contractual and statutory rights and is liable for damages on those claims. We remanded to the district court for determination of damages. *See Maykuth v. Adolph Coors Co.* [*Maykuth I*], 690 F.2d 689 (9th Cir.1982).

On remand, the district court refused to award Maykuth damages. It found that the amount that Maykuth would have lost, had business operations continued, exceeded the amount that Maykuth did lose as a result of the breach of contract by Coors. Maykuth appeals this determination, arguing that the district court erred in failing to take into account and to enforce buy-out provisions in the distributorship agreement. We agree and remand for enforcement.

# I

## BACKGROUND

In January 1977, Coors and Maykuth entered into a distributorship agreement. That agreement permitted termination in any of three ways. Under ¶ II(1), a distributor could be terminated immediately for specified highly egregious conduct, including commission of a felony, conduct constituting moral turpitude, and revocation of Maykuth's state liquor license.[1]

The second termination provision, which appeared in ¶ IX(1), allowed for termination by either party on thirty days' notice. The terminating party was not required to specify a cause for the cancellation. In the event of such termination, the distributor could invoke a separate provision, ¶ VIII(2), that required Coors to purchase the business's assets (the "buy-out" provision).[2]

The third basis for termination, ¶ IX(2), involved breach of contract.[3] If Coors determined a breach had occurred, it was

---

1. ¶ II(1) provides in full:
 The Distributor agrees:
 (1) At all times to be aware of and adhere to all local, state, and Federal laws and regulations applicable to Distributor's business pursuant to this Agreement. Violation of said laws and regulations, dishonesty, conduct involving moral turpitude, conviction of a felony, infamous crime, or any Federal crime which is punishable in a Federal penitentiary, revocation, nonrenewal or suspension of Distributor's federal, state or local license or permit, all shall be causes of immediate termination of Distributor at the option of Coors. In such event, Coors shall have the right to make whatever immediate arrangements it deems necessary or expedient to provide for the sale and distribution of Coors beer products in Distributor's area. Any insolvency of Distributor, institution of proceedings in bankruptcy by or against Distributor, receivership or dissolution of Distributor, assignment for benefit of creditors pursuant to insolvency or liquidation of Distributor, shall also be cause for such immediate termination by Coors.

2. ¶ IX(1) provides:
 This Agreement may be terminated by either party by the service upon the other party of at least 30 days advance written notice of termination.
 ¶ VIII(2) provides:
 In the event that Coors terminates Distributor pursuant to Article IX(1) hereinbelow, Dis-

tributor shall have, for a period of 30 days after the mailing of the termination notice, the option to require that Coors purchase certain assets of the Distributorship upon the following terms:
Payment by Coors in cash, free and clear of all liens and encumbrances:
(a) The fair market value of the assets used by Distributor to distribute Coors beer only.
(b) The cost of inventory of Coors products of Distributor on hand on effective date of termination.
(c) Goodwill of the distributorship in an amount equal to one-twelfth of the previous full twelve months' Coors sales of the Distributorship.

3. ¶ IX(2) provides:
 If Coors shall determine that Distributor has breached or is in default of any term or condition of this Agreement, then Coors shall so notify Distributor in writing specifying the grounds constituting such breach or default. Thereupon, except as provided in Paragraph II(1) herein, Distributor shall have a period of time, not more than 90 days from receipt of such notice by Distributor, within which to correct such breach or default to Coors' satisfaction. In the event that Distributor shall fail or refuse to correct such breach or default to Coors' satisfaction within the said time period, or as the same may be extended by Coors at its discretion, Coors shall have the right to terminate the Distributor.

required to serve notice on the distributor and allow him ninety days to cure the breach. As an additional protection, a distributor who received notice of breach under this clause could demand arbitration under ¶ XV of the contract. The purpose of the arbitration was to determine "whether proper cause as set forth in the Notice of Termination" existed.

In addition to these specific provisions of the distributorship agreement, the Montana statutes provided that certain statutory provisions were incorporated by law into every distributorship agreement with a distributor licensed to do business in the state. These provisions were for the purpose of providing certain minimum requirements before a brewer or beer importer could terminate a distributorship agreement with a local distributorship.[4]

On August 28, 1978, Coors advised Maykuth that his distributorship was terminated effective August 31, 1978. Coors cited Maykuth's alleged "lack of veracity" as the reason. In our earlier decision, we held that Coors had not validly terminated the distributorship for cause and that Maykuth was entitled to damages.

## II

## ANALYSIS

When Maykuth entered into the distributorship agreement with Coors, that agreement provided important protection for his investment in the plant and equipment necessary to carry on the business. The agreement provided that Coors would not terminate the distributorship relationship arbitrarily or at will without buying Maykuth out. If Coors did not intend to buy him out, it had to terminate the distributorship for cause. The agreement had two specific provisions dealing with termination for cause. (1) The agreement provided in ¶ II(1) that Coors could terminate the distributorship immediately for cause without notice. As we discussed in our prior opinion, the cause had to be an egregious one, such as the commission of a felony or the violation of state or federal law. (2) The agreement provided in ¶ IX(2) that Coors could terminate the distributorship for a lesser cause, but Maykuth was afforded certain procedural protections before this could be done. He had to be given notice, and an opportunity to cure the deficiency in performance. Furthermore, he had a right to challenge in an arbitration proceeding whether there was "proper cause" for the termination of the distributorship.

■ The Montana statutes afford additional protection to a distributor against arbitrary termination of a distributorship by a brewer or beer importer. Those provi-

---

4. Mont. Code Ann. §§ 16-3-221 and 16-3-222 (1983) provide in part:

 **16-3-221. Illegal acts by brewers or beer importers.** It is unlawful for any brewer or beer importer or any officer, agent, or representative of any brewer or beer importer to:
 ....
 (4) cancel or terminate, except for just cause or in accordance with the current terms and standards established by the brewer or beer importer then equally applicable to all wholesalers, any agreement or contract, written or oral, or the franchise of any wholesaler existing on January 1, 1974, or thereafter entered into to sell beer manufactured by the brewer or imported by the beer importer.... After July 1, 1974, the provisions of 16-3-221 through 16-3-226 shall be a part of any franchise, contract, agreement, or understanding, whether written or oral, between any wholesaler of beer licensed to do business in this state and any manufacturer or beer importer doing business with the licensed wholesaler just as though the provisions had been specifically agreed upon between the wholesaler and the manufacturer or beer importer.

 **16-3-222. Mandatory provisions of brewer-wholesaler or beer importer-wholesaler contracts, agreements, and franchises.** All contracts, agreements, or franchises between a brewer and a wholesaler or a beer importer and a wholesaler shall specifically set forth or contain the following:
 ....
 (4) a procedure for the review of alleged wholesaler deficiencies, including the submission in writing to the wholesaler by the brewer of said deficiencies if the deficiencies are susceptible of correction and if the wholesaler decides to correct said deficiencies, and that a reasonable period of time shall be given the wholesaler for rectification of said deficiencies prior to any notice of intent to terminate;
 (5) a termination clause providing that the brewer shall deliver, in writing, to the wholesaler a 60-day notice of intent to terminate the agreement, contract, or franchise.

sions were incorporated by law into all beer distributorship agreements with distributors licensed in the state. Thus, the statutory provisions had to be read along with the other provisions protecting the distributor. *Reding v. Texaco, Inc.*, 598 F.2d 513, 519–20 (9th Cir.1979); *see also* 3A. Corbin, *Corbin on Contracts* § 551, at 200–01 (1960). A brewer or importer of beer could not validly terminate a distributorship under any provision that did not provide the minimum statutory protection.

In our prior opinion, we concluded that Coors could not terminate the Maykuth distributorship, as it did, without any payments to Maykuth, on the basis of ¶ II(1), because the cause specified was not of the egregious type therein specified. It is also doubtful that termination under this section was proper because of Coors's failure to meet the statutory minimum requirements; but, as noted in the prior opinion, we found it unnecessary to consider that point because the cause Coors specified was insufficient to terminate under that section. *Maykuth*, 690 F.2d at 693 n. 4.

We also determined that Coors had failed to establish proper cause under the procedures provided by ¶ IX(2) (which did meet the statutory minimum requirements) because Coors did not comply with the procedures specified in ¶ IX(2).

We further held that Coors could not validly terminate Maykuth's distributorship under the at-will provisions of ¶ IX(1) without meeting the statutory minimum requirements, even though ¶ IX(1) had the additional protection of the buy-out provision. Thus, the statutory cause and notice requirements had to be read in conjunction with this at-will termination provision, just as they had to be read as a statutory minimum for any other termination provision of the distributorship agreement. The wording of that paragraph of our prior opinion was not as precise as it might have been, in that the language could be construed as meaning that the provision was unlawful and thus invalid for all purposes, whereas our meaning was that it could not

validly have been the basis for a lawful termination of the agreement by Coors. This imprecision no doubt misled the district court in its decision on remand.

 It is apparent that the Montana statutory provisions, which were designed to protect a distributor from the arbitrary termination of his distributorship, were not intended to invalidate any additional contractual protection the distributor already had under a distributorship agreement, such as provided by ¶¶ IX(1) and VIII(2) of Maykuth's agreement. Paragraph IX(1) is not unlawful and thus invalid for all purposes; it is only invalid as a basis for Coors to terminate the distributorship without complying with the minimum statutory requirements. The buy-out protection afforded to Maykuth under ¶ IX(1) and ¶ VIII(2) is not voided by the Montana statutes providing additional procedural protections to the distributor; the statutes serve to enhance that protection by further requirements.

The net effect of the distributorship agreement, as enhanced by the additional statutory provisions, was that if Coors validly terminated for cause, in compliance with the contractual and statutory provisions, it owed Maykuth no compensation. If Coors terminated the distributorship without complying with those termination-for-cause provisions, then the minimum Coors would owe to Maykuth is the amount due under the buy-out provisions of ¶¶ IX(1) and VIII(2).

 As discussed in our prior opinion, Coors failed to establish cause, as required by the contract in ¶ II(1) or ¶ IX(2). This left Maykuth with his contractual minimum protection—that if Coors terminated the contract without establishing cause, he was at least entitled to be bought out as provided in ¶ IX(1).

The district court awarded no damages to Maykuth because the distributorship had lost money in the past. Under the provisions of ¶ IX(1), Maykuth, himself, could have terminated the agreement on 30 days'

notice. However, if he chose to continue to try to build his business and realize on his investment, Coors could not terminate him as a distributor unless it established proper cause as provided by the contract (as enhanced by the statutory provisions) or unless it bought him out under the provisions of ¶ VIII(2).

Coors, having opted to terminate the contract without giving notice and without giving Maykuth an opportunity to cure or to invoke the arbitration clause, did so at its peril and cannot escape liability for damages for wrongful termination. Maykuth is entitled at a minimum to the benefits afforded to one terminated without cause under ¶¶ IX(1) and VIII(2).

The district court shall include in its award calculation *each* asset that qualifies under ¶ VIII(2), regardless of whether evidence regarding its value was introduced at trial. For qualifying assets already sold, Maykuth shall be entitled to be credited with the difference between the price obtained and the fair market value on the effective date of termination, August 31, 1978. We contemplate that a full evidentiary hearing will be necessary to implement this decision.

The decision of the district court denying Maykuth damages is vacated, and the case remanded for enforcement of ¶ VIII(2).[5] REMANDED.

Costs are awarded to the appellant.